Ruffin, C. J.
 

 The court is of opinion, that the decree is erroneous. The bill is not founded upon an equitable title. It proposes to state a legal title in the plaintiffs, and assumes that they could undoubtedly recover at law, if they chose to bring an ejectment. The whole purpose of coming into this court, as appearing upon the bill, is to obtain an account of the ore already dug, and the profits made therefrom, which the plaintiffs claim as the legal owners, and for an injunction against further working the mines, upon the ground that the defendants, by reason of their insolvency, will not be able to pay the damages, which the plaintiffs may recover at law, as legal owners. No privity between the parties is stated, but the defendants are mere trespassers. With respect to the first object of the bill, namely, the account, it is to be observed, that we have nothing to do at present. For although the plaintiffs be entitled to a discovery as to the profits, and also to an account and relief by a decree for payment, yet it does not follow, that they are entitled to have, or, rather, to hold up an injunction, indefinitely, against a person, who is in the exclusive possession of the premises. The general principle is, that a Court of Equity takes no jurisdiction in cases of mere trespass, not even by granting a temporary injunction.
 

 But it is admitted, that in cases of mines, timber, and the likej when the trespass consists in acts, by which the substance pf the estate is destroyed or carried off, there is an established
 
 *317
 
 exception, and .that injunctions have been granted to restrain the continued commission of the trespass, upon the grounds that it is an injury of the nature of destructive waste, and irremediable mischief to the substance of the inheritance.
 

 But it is plain, that the jurisdiction to restrain, trespasses, like that to restrain nuisances, is not an original jurisdiction of the Court of Equity, which enables this court, under the semblance of preventing an irreparable injury to a legal estate, to take a jurisdiction of deciding conclusively upon the legal title itself. Therefore, in such case, the plaintiff ought to establish his title at law, or show a good reason for not doing so; and if he will not,- this court cannot undertake, against a defendant’s answer, to try the questions of title and trespass and nuisance. Drewry on Injunctions, 238. In
 
 Chalk
 
 v.
 
 Wyatt.
 
 3 Mer. 633, the defendant, who claimed as lord of the manor, was removing earth, shingles, and stones, from under a bank belonging to the plaintiff, which protected his land against the irruptions of the sea, and Lord Eldon granted the injunction, in consideration of the irreparable injury the plaintiff- was likely to sustain ; but he said, at the same time, that he would not have granted it, if the plaintiff had not established his right at law by an action, which he had previously brought and tried. However, it seems right to give an injunction even before a trial at law to prevent such irreparable mischief, as, without the interference of the court, would be done before there could be a trial at law. But it is manifest, that, except in cases where Equity assumes jurisdiction to prevent multiplicity of suits, or on other peculiar ground, the relief by injunction against trespass upon alegal owner ought only to be granted in aid of the defective legal remedy, and not to supercede the jurisdiction of the courts of law over a question purely legal; and, therefore, that the Court of Equity should only grant the injunction, where the plaintiff is endeavoring to establish his title at law, and until he should have had a reasonable time allowed for that purpose. Hence, Mr. Drewry, page 1S6, observes, that, in such cases, where, from the nature of the circumstances, very great mischief may result
 
 *318
 
 to the defendant from the injünction being held lip too ioftgj tbc interposition of the court must be with considerable pressure, that, on the part of the plaintiff, there, shall be no delay g0jng t0 trial j and unless some means of procuring a speedy trial are insured, the court will not sustain the injunction. In the present ease, it seems extraordinary, that the plaintiffs have brought no action of ejectment, from the time they took the sheriff’s deed in January, 1829, until last August, when this order was made, a period-of more than five years and a half; during all which time, the defendant has been in the exclusive possession, insisting upon an equitable right in himself, and a legal title in his trustee. No reason is given for this singular conduct, but one in very loose terms, intimating, however, sufficiently for us to understand, though vaguely, that the defendant held the possession either upon some agreement or understanding — perhaps not very definite —that the plaintiff’s purchase and conveyance from the sheriff should stand only as a security for the debt the company owed them, or that the defendant should pay them and take their title. Enough does not appear in the bill to authorise one to say, that is its statement; if it had, perhaps it would be difficult to sustain the injunction at all, as it would show an equitable interest in the defendant. But unless something of that kind iJs to'be inferred from the bill, it sets forth nothing as an excuse for not having sued at law: it holds forth no purpose of the plaintiffs to sue at law ; and the order of the court lays them under no obligation thus to sue. What, then, is to be the effect of the decree in this suit? Either' this court must, upon the hearing,-try the legal title, and decree, upon the ground that it is in the plaintiffs, that the defendants surrender the possession to them, and thus turn this writ into an ejectment,-strictly speaking, or the defendant must be left in possession of the premises, without being decreed to do any thing, but with an injunction upon him in the negative, that he shall refrain from further operations on the mine and land perpetually. Such a decree as the former has been often refused for this court will not sustain a mere ejectment bill.- And a decree
 
 *319
 
 of the latter kind, we have never known to be even asked for. It would be inconsistent with first principles. For it would leave the plaintiffs still under the necessity of going to law to recover the possession, with liberty to the defendant, ofcourse, to shew that they had not the legal title ; and the consequence might be, that persons, who turned out to have no right themselves, would have an injunction over anotherperson, restraining him perpetually from all use of the property in his possession. The court-upon the hearing, therefore, would be obliged to direct an action at law, and a trial of it within a reasonable time. And in a case of this kind, where the mines may be injured by suspending operations, and the steam engines and other machinery be ruined by not being kept in useandrepair? the plaintiffs ought to be required to speed a trial, even if the application were recent after the injury alleged. But, certainly, after so great a lapse of time as five years and a half, it is wrong to keep up an injunction indefinitely, without an offer on the part of the plaintiffs, or a requisition on the part of the court, that a suit should be brought. And, thus viewing the case, the insolvency of the defendant becomes immaterial. Indeed, it is still more oppressive to a person in that situation, than if he were better off, to hold over him an injuction indefinitely, although the plaintiff will not, as he rnight, establish his title at law, and turn the defendant out of his possession.
 

 The case has thus far been considered, as it is made by the plaintiffs themselves in the bill. The answer makes a pase equally strong against the plaintiffs, though upon different principles. According to the answer, the plaintiffs, it is true, could not maintain an action at law, as they have not the legal title, but it is in Morrison, the trustee. Therefore, the plain,tiffs had a right to come here in the first instance, if they had stated their case properly in the bill. But, then, if they rely on that disclosure in the answer, they must submit to all the other consequences of that statement. The legal title is held by the trustee for the benefit of both the defendant and his vendees ; and as between the defefidant and his vendees, as thp
 
 *320
 
 legal title was purposely retained as asecurity for the purchase money, the defendant is looked ou in this court as an equitable mortgagee, and as such had a right to enter into possession of premiseSj as the means of compelling the mortgagor to pay the debt, or asatho means of raising it out of the profits of the estate. If, then, the interest of the Franklin gold mining company was the subject of sale under execution, the plaintiffs bought subject to the same equity which affected the company.
 
 Freeman
 
 v. Hill, 1 Dev. & Bat. Eq. 389; and, indeed, the answer states that they had distinct knowledge of all the circumstances. Therefore, as the defendant has the superior equity to be satisfied his debt for the residue of the purchase money, he may avail himself of his right as equitable mortgagee, and of the legal title of the trustee, to retain the possession unless the plaintiffs will redeem by paying the principal, interest, and costs, due him. We speak thus upon the supposition, that the debts secured in the defendant’s assignment to Morrison have been paid, and that the trust resulted to the defendants; which, though not positively stated, we collect from the answer to^be so, as the defendant speaks of the unpaid balance of the purchase money being his own. As to the stock in the pompany, which the defendant was to have, we presume that is now nothing, as we understand from the circumstances, rather than from any particular statement in the pleadings, that the company is one of the many broken companies or bubbles of its day, in which the stock is not worth a copper. But, for the money balance of the price, certainly, the defendant has a right, as the title is situated, to look to the property as a security, and, if so, his right is, to that extent, preferable to that of the plaintiffs. The circumstance, that the defendant became a stockholder in the company, makes no difference, for each stockholder has a capacity, as an individual, to contract with the corporation ; and it does not appear that the stockholders were, by the charter, rendered personally liable for the debts of the corporation. It is true, also, that, even as mortgagee in possession, the defendant might he
 
 *321
 
 restrained from doing any act wilfully to the destruction or detriment of the estate, as felling ornamental trees, or making the mines ruinous by not keeping proper props, or removing rubbish, or the like; because the land is only a security to the mortgagee, and is considered in this court as otherwise being the property of the mortgagor. But the mortgagee is doing nothing wrong in merely working the mine, and thereby receiving money to be applied in sinking the mortgage debt. Such is the case before us ; for the bill alleges no improper act in the defendant in the mode of working the mine, but .it is merely founded on the allegation, that the plaintiffs have the title, and that the defendant is insolvent, and therefore cannot answer the plaintiff’s damages arising from his trespass. But until the defendant’s debt has been paid, his insolvency can lay no foundation for stopping his operations ; because all his earnings are immediately accounted for as credits on the debt the estate owes him.
 
 So
 
 we think, in every point of view, the injunction should have been dissolved. A.s legal owners, the plaintiffs ought to have brought suit at law long ago, and asked only for an injunction until a trial could be had. As mortgagors, or the assignees of a mortgagor, or of one treated in equity as a mortgagor, they should have filed their bill to redeem, and offered to pay the principal and interest due to the defendant. We speak in reference to the defendant, William Davidson, to whose situation alone these remarks are applicable.
 

 As to the other defendants: Jane Dunn is in'default in not answering, and this appeal brings up no question as to her. To the defendants, Sarah Davidson and Glenn, it is now immaterial what becomes of the injunction, as the lease to tho former had expired before the motion to dissolve. But they were entitled, for tho foregoing reasons, to be lot loose by a dissolution of the injunction ; though not with costs, we think. For, notwithstanding the answers, we caunot shut our eyes to the admitted facts, that the original bill was filed on the 25lh of August, and between that day and the 3d of September, the
 
 *322
 
 defendant, Sarah Davidson, a single daughter of the origiual defendant, and an inmate of his house, took a lease for the premises; nor fail, as persons of common sense, to infer there-prom tflat the purpose was to enable her father to proceed in working the mine as he did before, only in her name instead of his own: especially as William Davidson expressly states his answer, that
 
 he
 
 has been in possession, ever since the sheriff’s sale, for his own use, as entitled to a balance of the purchase money out of the land. And we cannot understand the equivocation, on which the defendants, under such circumstances, can bring themselves to deny, that, in taking the lease from Dunn, they had it as an object, to evade the injunction. We cannot doubt, that it was an artifice in fraud of the process, and therefore we think that none of the defendants should be entitled to costs on the dissolution of the injunction.
 

 This opinion will be certified to the court of equity; that further proceedings may be had in the cause accordingly.
 

 Per Curiam, Ordered accordingly.