Nash, C. J.
 

 Tbe power of a Court of Equity to restrain waste, is of ancient standing; to restrain a mere civil trespass, is of modern origin. The first case in wbicb it was canvassed, was that of tbe Maequis of Devonshire against SaNdys, 6tb Yes. 107. There Lord Tburlow refused tbe application. It is, however, now firmly established — admitted at first with hesitation, it is exercised now with much caution — being a trenching upon tbe jurisdiction of the ordinary Courts of con> mon law. Tbe act complained of must not be a mere ouster or temporary trespass, but one attended witb permanent results — destroying or materially altering the estate. Adams Eq. 210. There must be something particular in the case, so as to bring tbe injunction under tlie bead of quieting possession or preventing irreparable inquiry — Livingston v. Livingston, 6 John. C. R. 497. The injury threatened must not be such as is susceptible of compensation at law. We think,
 
 *177
 
 the decretal order in tbis case, dissolving tbe injunction, was correct. There may have been sufficient grounds for the original order, but certainly none for the continuance of it, after the coming in of the answer. The bill alleges, that the plaintiffs are the owners of a large tract of land, and that at the time the title was acquired by them, the defendant was in possession of some two'hundred acres, where he still resides —and “that he has greatly wasted and otherwise injured the land, by cutting down timber, and converting the same into ton-timber, and conveying it off, and that he has threatened he will continue to do so, as long as he remains in possession. That the land is
 
 marnly
 
 valuable for timber and turpentine, and if the timber is cut off, the value will be greatly impaired” — an action of ejectment has been brought by the plaintiffs to recover the possession of the land. To give a ground for an application to this Court, for its protecting aid, the bill further alleges, “ that the defendant is a man of little or no substance, and as your orators are
 
 informed
 
 and
 
 Relieve,
 
 is insolvent, and if he be permitted to cut down and carry off the trees from the premises, that he will not be in a condition, upon your orators’ gaining the possession, to make any compensation therefor. Tour orators
 
 believe
 
 that it is the intention of the defendant to cut down and carry off the timber, and otherwise to waste the timber, &c.”
 

 The answer is fully responsive to the bill — meets its allegations without any thing like evasion — admits that he, the defendant, is in possessian of the land, which he avers belongs to him ; that the land is not mainly valuable for timber and turpentine, but is good farming land; that he has cut and sold about twenty trees, and since he took possession, he has built a house on the premises, ánd otherwise greatly improved its value; expects to live there, and intends still further improvements ; has not wasted the land, and does not intend to do so. Denies the defendant, is insolvent, and avers that over and above the land, he has other property sufficient to answer any damages the plaintiffs may recover. The pleadings
 
 *178
 
 present the ordinary case of a contest between two men for the possession of a tract of land, each claiming the legal title, and the defendant, in the meanwhile, using it in the ordinary course of agriculture, clearing and erecting buildings with a view to a permanent residence. If, in such a case, a defendant can be enjoined, we see no good reason, why in every case, where he is a poor man, possessed only of the land for which he is contending, he may not be stopped by an injunction, from opening and clearing the ground. The defendant admits the cutting and selling twenty trees. Is this sufficient to prove irreparable mischief? Is his expressed determination to go on and clear*, and improve the land sufficient? Surely not. As to his inability to answer for such damages as the plaintiff may recover, he avers his ability to pay them, and positively denies his insolvency.
 

 The plaintiff’s counsel drew our attention to the following-cases as authorities in his favour. "We think they are each distinguishable from this, to-wit: Puenell and Daniel, 8th Ired. Eq. 9, Loyd and Heath, Busbees Eq. 39, Capeiiaet and Hhoon and others, Busbees Eq. 30. The latter case contains a very clear discrimination between what are termed common injunctions and special injunctions; that in the former, the plaintiff cannot avail himself of affidavits upon the argument to sustain his application, but must derive all his equity from the answer, and if that is fully responsive, and denies the equity, the injunction must be dissolved. In a special injunction, the bill may be used by the plaintiff as an affidavit, in contradiction to the answer. In Loyd and Heath, the Court recognises the difference between the injunctions, as pointed out in Capehart’s case, and that in a special injunction, both the bill and answer, are to be considered by the Court,
 
 “
 
 and if, upon the whole case, the matter is left doubtful, the injunction will be continued to the hearing, so as to givfc the plaintiff a chance to support his allegations by proofs before a thing, the consequence of which is irreparable, is allowed
 
 to
 
 be done.” How, the doubt here alluded to is, whether the
 
 *179
 
 act complained of, is of a nature to produce irreparable mischief to the plaintiff. Trying this case by that rule, the injunction must he dissolved. The mischief is stated io be irreparable, hut the bill itself does not show how it’is so, for it states that the land is mainly valuable for the timber and turpentine. The answ er, which is also evidence before us, is that the land is valuable for farming purposes, and of course, clearing it improves its value. Taking this statement in connection with the defendant’s averment as to his ability to pay all such damages as might be recovered against him, we are satisfied that the injury, of which the plaintiff complains, is not irreparable. In the case above stated, the defendants had made on the land, and had then on hand, two hundred thousand shingles, and the prayer of the bill was to restrain them from selling them. The defendants, in their answer, denied that they had got the shingles on the' land of the complainants ; but the truth of that allegation depended on a question of boundary, and the answer upon this point was not as clear as it ought to have been. Eor these reasons, the injunction was continued to the hearing. In Pubnell and Daniel, the motion to dissolve the injunction was refused, because, from the nature of the act complained of, the mischief, if permitted, was clearly irreparable. Neither of these cases then, meet this. We are sustained in the view we have taken of this case, by the opinion of the Court in Weight and Geist, Busbee’s Eq. 203. “ It is well settled,” says his Honor Judge Battle, in delivering the opinion of the Court, “ that oh a motion to dissolve an injunclion to stay waste, the bill may be read as an affidavit to contradict the answer, and if, upon taking the whole together, the question is left in doubt, the injunction will be retained to the hearingand upon that principle, the Court, entertaining no doubt, the injunction was dissolved. Here, as before stated, we have no doubt. In the decree dissolving the injunction in this case, there is no error.
 

 This opinion will be certified to the Court of Equity of Eohe-son county, and, the plaintiffs will pay the costs of this Court.
 

 Pee CuRiam. Decree accordingly.