PeaesoN, J.
 

 The general rule is, Equity does not extend its jurisdiction either to offences against the public, or to civil trespasses. In reference to the former no exception has ever been made ; but in reference to the latter an exception has been allowed after much hesitation, and jurisdiction assumed for the
 
 prevention
 
 of
 
 torts
 
 or injuries to property, by means of the writ of injunction, under certain restrictions, namely, two conditions must concur in order to give jurisdiction — the plaintiff’s title must be admitted, or be established by a legal adjudication, and the threatened injury must be of such a nature as will cause irreparable damage.
 

 The ground of the first restriction is obvious; a court of Equity cannot pass upon the legal title; to dó so would convert a bill in Equity into an action of ejectment. It is not necessary, however, that the legal title should be established
 
 *179
 
 before the aid of a court of Equity is asked for, because tbe injury may be committed before a trial at law can be had, and when the bill sets out that an action has been, or is about to be, instituted for the purpose of establishing the title, Equity will exert its power of injunction in aid of the action at Law, by taking care of the subject-matter of the action, but without assuming jurisdiction to decide the question of title.
 
 Irwin
 
 v. Davidson, 3 Ire. Eq. 316.
 

 The ground of the second restriction is equally obvious. If a court of Equity interfered to prevent an alleged trespasser from doing ordinary acts of ownership, such as cultivating the land, clearing and opening new fields, &c., a bill for an in-' junction would accompany a declaration in ejectment, almost as a matter of course, causing not only much private loss, but great detriment to the public. Fields already cleared would lie idle, woodland that, in a country like ours, ought to be cut down and cultivated, would stand wild and unproductive, and the valuable products of our forests would no longer swell the tide of trade.
 

 In the application of this restriction, much difficulty occurs in defining what injury is irreparable. The word means that which cannot be repaired, retrieved, put back again, atoned for. The most absolute and positive instance of it is the cutting down
 
 “
 
 ornamental trees,” such as the noble oaks in our State-House grove. “ A tree that is cut down cannot be made-to grow again.” But the meaning of the word “ irreparable”' pointed at by this example, is not that which has been adopted by the courts either in England or in this State.
 
 Grass
 
 that is cut down cannot be made to grow again, but the injury can be adequately atoned for in money. The result of the cases fixes this to be the rule : the injury must be of a
 
 peculiar nature,
 
 so that compensation in money cannot atone for it; where, from its nature, it may be thus atoned for, if in the particular case the party be insolvent, and on that account unable to atone for it, it will be considered irreparable.
 

 In England, analogies drawn from the doctrine of
 
 desti'ue-tive waste
 
 are resorted to for the purpose of aiding in the ap
 
 *180
 
 plication of the
 
 rule. It
 
 is
 
 there
 
 held, that if an alleged trespasser is about to pull down the dwelling-house, an injunction will lie, without an averment that he is insolvent; for, although -with money enough, as good, or a better house can be built, still it involves a matter of
 
 feeling-
 
 — there is an attachment to the house in which our ancestors lived. This feeling is certainly not as vivid in this country as it is in England. How far our courts will follow their decisions, is not now for consideration. There may be a distinction between pulling down a house merely for destruction,, and doing so for the purpose of improvement. So, it is there held, that if an alleged trespasser is about to work a mine, an injunction will lie without an averment of insolvency, because it is
 
 de
 
 struction, and takes away the substance of the latid, and there is no mode of ascertaining the value, or the quantity of the copper, tin, -or other mineral that is extracted from the bowels of the earth. Our courts have shown a disposition not to interfere, unless there be an averment of insolvency. In
 
 Falls
 
 v.
 
 McAffee, 2
 
 Ire. 239, it is suggested that instead of an inj unction, the proper comee was to appoint a receiver, so as not to stop the working of a gold mine ; for that was alike “ opposed by public policy and private justice.” This suggestion is adopted in the
 
 Deep River Gold Mining Company
 
 v.
 
 Fox, 4
 
 Ire. Eq. 61; in which case, as well as in
 
 Irwin
 
 v.
 
 Davidson,
 
 supra, there is an averment of insolvency. The subject of working mines is, however, not now under consideration.
 

 So, it is there held, that if an alleged trespasser is about to CUt down timber trees, as distinguished from ornamental trees, an injunction will lie, without an averment of insolvency; becausq it is
 
 desinmction,
 
 and takes away the substance of the land, and would be waste if committed by a particular tenant. Our question is, how far the English doctrine is applicable here in regard to clearing the land, cutting timber for shingles, and staves and working trees for turpentine ?
 

 The analogy taken from the doctrine of destructive waste fails ; for it is settled with us that a widow, or other tenant for life, may clear a reasonable quantity of land, and is not
 
 *181
 
 confined' to the use of timber as “ house-bote,” “ fire-bote,” “ hay-bote,” but may sell or otherwise dispose of the wood on the land so cleared. So, the widow may cultivate the pine-trees in her dower-land for the purpose of getting turpentine, and if dower is assigned on land fit for nothing but to afford staves and shingles, it is difficult to conceive what other use she can make of it.
 

 Putting this analogy out of the way, the naked question is: in the present condition of our country, does the cultivation of pine-trees for turpentine, or the cutting down of oak-trees for staves, or cypress trees for shingles, cause an irreparable injury? — one which cannot be compensated for im damages? Tlie very purpose for which these trees are used by the owners of land is to get from them turpentine, staves and shingles,
 
 for sale.
 
 It follows, therefore, as a matter of course, that if the owner of the land recovers from a trespasser the full value of the trees that are used for these purposes, he thereby receives compensation for the injury, and it cannot, in any sense of the word, be deemed irreparable. So that private justice and public policy, which calls for a full development of the resources of the country, alike forbid the interference of a court of Equity, except in cases where, from the insolvency of the alleged trespasser, the compensation in money cannot be had. Accordingly in
 
 Lloyd
 
 v. Heath, Bus. Eq. 41, the bill avers the insolvency of the defendant, and it is treated of in the opinion as a necessary part of the plaintiff’s equity. So, in the other cases in reference to timber, and in the gold-mining cases, this averment is always made as a necessary part of the plaintiff’s equity. Indeed, in
 
 Thompson
 
 v.
 
 Williams,
 
 1 Jones’ Eq. 178, it is said that an injunction against clearing and opening land, as is usual among farmers, would not be sustained, although there is an averment of insolvency. “If in such a case a defendant can be enjoined, we see no good reason why, in every case where he is a poor man, possessed only of the land for which he is contending, ho may not be stopped by an injunction from opening and clearing the ground.”
 

 
 *182
 
 In our case, the injury, against which the plaintiff asks for the protection of an injunction, consists in the cultivation of trees in procuring turpentine, and in getting staves for barrels. It is not necessary to decide whether the cultivation of turpentine and, as an incident thereto, the getting of staves and lioop-p oles for the b arrels n ecessary toputitin,isnot such an ordinary use of it, in the course of agriculture, as does not come within the jurisdiction assumed by the courts of Equity in reference to the prevention of civil trespasses, even although there be an averment of insolvency, for the bill does not make that averment, and on that account is fatally defective. The bill contains a general allegation that the acts complained of will be productive of irreparable injury, but the allegation must be attended with such a statement of facts, as enables the court to see that such would be the result;
 
 Bogey
 
 v.
 
 Shute,
 
 1 Jones’ Eq. 180. As instances where there is such a statement of facts as enables the court to see that the damage will be irreparable, and where an averment of insolvency is not necessary, we may refer to
 
 Purnel
 
 v. Daniel, 8 Ire. Eq. 9;
 
 Troy
 
 v.
 
 Norment,
 
 2 Jones’Eq. 318. The injuries complained of in these cases were, in their natures, destructive. Put ours is a new country; our policy is to subdue the forest and de-velope its resources, and we decide, that to work trees for turpentine, or to cut down trees for staves, is not destruction, and the court cannot see that the injury will be irreparable, unless there be an averment of the insolvency of the defendant.
 

 Upon the coming in of tire answer, a motion was made to dissolve the injunction, which was allowed. Afterwards, at a subsequent term, a motion was made to dismiss the bill, which was disallowed, and the defendant appealed to this Court. ¥e have seen that, upon the plaintiff’s own showing, he had no equity. After the answer came in, alleging the defendant’s solvency, and the consequent dissolution of the injunction, there was an additional ground for dismissing the bill. It could only then be held over as an original bill for discovery, and on account of the turpentine and staves which the defendant had disposed of; in other words, as a bill for an
 
 *183
 
 account against a trespasser. This would certainly be a bill of the “ first impression.” Where Equity has jurisdiction to prevent a wrong by injunction, if there has been loss before the injunction is sued, the court will direct an account of the profit that the defendant has made, as incident to the jurisdiction assumed for the purpose of injunction, so as to prevent circuity and expense. After a plaintiff has established his right to come into one court for an injunction, he will not be required to resort to an action in another court to recover his damages. But the equity for the account is
 
 strict-' ly incident to the injwictiors,
 
 and therefore, if an injunction is refused, an account cannot be given, but the plaintiff must resort to a court of law. Adams’ Eq. 219.
 

 The motion in the court below to dismiss the bill, ought to have been allowed.
 

 Pick C ubi am, Decree accordingly.