J. W. STEWART v. MUNGER & BENNETT, Inc.

(Filed 24 October, 1917.)

1. **Injunction — Mortgage — Equity—Foreclosure—Insolvency—Pleadings—Title to Lands—Statute—Courts—Bonds of Indemnity.**

M. mortgaged land, and timber standing thereon, to L., who assigned the mortgage notes to the plaintiff to secure him as an endorser on notes of L., on which, as such surety, the plaintiff was compelled to pay large sums of money. Thereafter, M. mortgaged the same property to the plaintiff to secure a note given for borrowed money. Both of the above mortgages were duly registered, and then M. attempted to convey the property to L., subject to the second mortgage, who conveyed, or attempted to convey, it to the defendant. The defendant entered upon the land and began to cut the timber which plaintiff's action seeks to enjoin without allegation of defendant's insolvency, with averment that the value of his security consists in the standing timber and not in the land: *Held,* not an action as in tort for trespass, but in the nature of a bill in equity for foreclosure and an injunction to protect the security, which does not require an allegation of defendant's insolvency; and it appearing that plaintiff stood by and permitted defendant to make extentive and ex-pensive preparations for cutting and removing the timber, without object-ing, the judge may require that a sufficient bond be given, in lieu of an

injunction, to secure plaintiff from loss, and if proper he may appoint a receiver to inspect the cutting and removal of the timber.

2. **Injunctions — Pleadings — Insolvency — Courts — Equity—Statutes—Receivers.**

Revisal, sec. 807, making it unnecessary to allege defendant's insolvency to enjoin a trespass continuous in its nature, or the cutting or destruction of timber trees, construed with section 809, does not deprive the courts of their discretionary power to require a bond to secure the plaintiff against damages, or to appoint a receiver, where there is a *bona fide* contention as to the title to lands or timber trees thereon.

3. **Mortgage—Lands—Timber—Trusts and Trustees.**

Where one has acquired land and timber growing thereon, subject to the equitable rights existing under a prior registered mortgage, in an action to prevent the cutting of the timber, and the consequent impairment of the security, he is to be regarded as a trustee of the creditor to the extent of this equitable right of the latter.

4. **Injunctions—Timber—Lands—Title—Statute—Equity.**

Where the plaintiff's action is to enjoin the impairment of his security, by mortgage on lands and timber growing thereon, in the nature of a suit to foreclose and preserve his security intact, the action, where his right is denied, involves the title to the timber, wherein an allegation of defendant's insolvency is not required under Revisal, secs. 807, 808, 809.

5. **Mortgages — Legal Title—Assignments — Outstanding Equities—Merger Liens.**

Where the mortgagee of lands has assigned the notes secured by the mortgage to another to obtain his endorsement as surety on a note, and the latter has been required to make payments, as such surety, the fact that subsequently the principal on the note acquired the mortgagor's equity in the lands, does not affect a merger of the equitable and legal title so as to defeat the superior rights of a holder of one of the notes secured by the mortgage to have the mortgage foreclosed and to enforce his lien.

CIVIL ACTION, heard by *Stacy, J.,* on a motion for an injunction, at chambers, 15 June, 1917, from CRAVEN.

Plaintiff brought this suit to foreclose a mortgage executed 1 May, 1906, by Maxwell Brothers Lumber Company, on land, timber trees, and other property therein described, to M. D. Lane, for the purpose of securing the payment of sixteen notes, two for $2,537.50 and $1,250, respectively, and each of the other fourteen notes for $2,500, some of them due 1 July, 1907; others, 1 October, 1907, and the remaining ones at different dates thereafter; the whole amount thus secured being $38,787.50. The mortgage was duly registered in Craven County on 15 May, 1906. M. D. Lane assigned to the plaintiff the notes secured by the mortgage for full value, and for the purpose of indemnifying plaintiff as surety or endorser of M. D. Lane on certain notes, also described in the complaint. The plaintiff was compelled to pay some

of the notes on which he was surety, or endorser, to the amount of $9,814.32.

Defendant entered upon the land, and has cut and removed large quantities of timber trees thereon, the land having little or no value apart from the timber. On 21 January, 1910, Maxwell Brothers Lumber Company executed to the plaintiff their note for $1,060.83, payable six months after date, with interest from date, and secured the payment of the same by a mortgage on the same property as is described in the first mortgage, except the timber rights on two of the tracts of land. All the mortgages and deeds were promptly and duly recorded. That nothing has been paid on the note for $1,060.83, except the sum of $500, on 19 February, 1914, and the balance thereof has been due and payable for some time; that afterwards the Maxwell Brothers Lumber Company conveyed the lands to M. D. Lane, subject, however, to the mortgage of 21 January, 1910, to the plaintiff, and M. D. Lane then conveyed, or contracted to convey, to the defendant corporation all the standing timber trees on the said land, with the right to cut and remove the same.

Plaintiff alleges that there is now due to him upon said notes and mortgage the sum of $10,275.15, and that if the defendant is permitted to cut the timber, or to continue to cut the same, as it is now doing, it will destroy the same, it being the most valuable part of the security for the payment of his notes, it having already cut 8,000,000 feet, valued at $25,000. The following allegations appear in the complaint:

"1. That notwithstanding this plaintiff's notes and mortgage, held as hereinbefore set out, the defendants have failed and refused to pay any amount whatever thereon to this plaintiff, and threaten to continue to cut and remove the timber from the aforesaid lands and every part thereof.

"2. That said lands are valuable chiefly for the timber thereon, and if the defendants are allowed to continue to cut and remove the timber from said lands this plaintiff's security will be seriously impaired, if not entirely destroyed, and he will be without remedy.

"3. That this plaintiff has notified the defendants of its claim against the aforesaid timber, and the defendants have failed to make any arrangements therefor, but are continuing to cut and remove the timber from the aforesaid lands.

"4. That there is no cleared land of any extent embraced within the boundaries of the lands described in said deed, and no cultivated area thereon."

The motion came on to be heard before the judge at the time and place appointed in the order temporarily restraining the defendants from cutting timber or removing the same from the land, and after argument by counsel, and consideration of the matter, the motion for a continuance of the injunction was refused, and the plaintiff appealed.

*Moore & Dunn for plaintiff.*
*T. D. Warren for defendants.*

WALKER, J., after stating the case: It has been fairly well settled that a court of equity will not enjoin an ordinary trespass, such as entering upon land and working turpentine trees, or cutting wood and making staves thereon, unless irreparable injury is threatened—that is, one for which there can be no sufficient recompense in money. It is therefore held that in such cases an averment of the defendant's insolvency is necessary, for if he is not insolvent and the plaintiff can recover an equivalent in money for the loss sustained by the trespass, the damage cannot in any proper sense be called irreparable. *Gause v. Perkins,* 56 N. C., 177; *Sharpe v. Loane,* 124 N. C., 1; *Lewis v. Lumber Co.,* 99 N. C., 11. By statute (Laws 1885, chap. 401; Revisal, sec. 807) it is provided: "That in an application for an injunction to enjoin a trespass on land, it shall not be necessary to allege the insolvency of the defendant, when the trespass complained of is continuous in its nature or is the cutting or destruction of timber trees." This act, as construed, does not deprive the court of the discretion to require a bond to be given by the defendant to secure plaintiff's damages, or to appoint a receiver instead of issuing an injunction. *Ousby v. Neal,* 99 N. C., 146; *McKay v. Chapin,* 120 N. C., 159; *Kistler v. Weaver,* 135 N. C., 388. By Laws 1901, chap. 666 (Revisal, sec. 809), it is provided that when there is a *bona fide* contention as to the title of the land or the timber trees thereon, no order shall be entered permitting either party to cut the trees, except by consent, until the title shall be determined, and that if the claim of one of the parties is not asserted in good faith and based upon evidence establishing a *prima facie* title, then, upon the motion of the other party, if he shall satisfy the court of the *bona fides* of his claim, and produce evidence showing a *prima facie* title, he may be allowed by order to cut the timber trees upon giving bond as required by law.

We do not deem this case as one in tort for trespass upon the land, but as an action in the nature of a bill in equity to foreclose the mortgage described in the complaint, and to protect by injunction the rights of the plaintiff until a foreclosure can be had. There could not be an action of trespass, because the plaintiff has neither the actual nor constructive possession of the land. *Drake v. Howell,* 133 N. C., 162. He is the holder merely of the notes secured by the mortgages, the entire legal title being in the defendants, under the deeds from Maxwell Brothers Lumber Company to M. D. Lane, and the latter to it. His only security for the payment of his notes is the lien he has acquired on the timber trees by virtue of the mortgages, and it would be strange, and certainly unjust, if

the defendant can be permitted to seriously impair this security by cutting down the trees so that it will probably become insufficient, and more surely so if they can make it wholly unavailable by destroying the trees altogether. We find it declared in 1 Pingrey on Mortgages (1893), sec. 863: "Courts of equity will interfere to prevent the commission of waste by the mortgagor in possession. This interference is based upon two grounds—(1) the right of the mortgagee to the protection of the entire security unimpaired during the life of the mortgage; (2) as between the mortgagor and mortgagee, the latter is deemed in law the owner of the fee, and as such entitled to protection. And where the mortgage is considered but a lien, the mortgagee is entitled to protection of equity against the commission of waste. The mortgagor in possession may exercise all acts of ownership if he does not impair the security; he must not depreciate the value of the premises and render the security insufficient." He further says that the mortgagee's lien will be protected in equity, and his ordinary remedy against the mortgagor to preserve and safeguard his lien is by bringing a bill in equity for an injunction. Some authorities hold that the mortgagee is entitled to have restrained any acts of waste by the mortgagor in possession which may diminish the value of the property subject to the lien, while others say that equity will not interfere in such cases unless the acts complained of are such as may render the property insufficient for the satisfaction of the debt, or of doubtful security; while others hold that equity will not interfere unless the sufficiency of the security is threatened. Pingrey, sec. 866. It is further said, quoting from this authority: "The rule is well settled that when the mortgagor is committing waste which impairs the security or renders it insufficient, chancery, at the suit of the mortgagee, will restrain him by injunction." *Harris v. Bannon,* 78 Ky., 568, holds the same doctrine, that upon application of a mortgagee, a court of equity will restrain the mortgagor from committing waste when it appears that the mortgage security will be endangered unless the court interferes. The principle, in another form, is thus stated in Pingrey, p. 883: "The mortgagee is entitled to be protected from acts of waste which would so far impair the value of the property as to render the security of doubtful sufficiency," citing *Moriarty v. Ashworth,* 43 Minn., 1, 2, 3. Not only must it be considered that the mortgage is held to secure payment of the debt, and not for the purpose of converting the mortgagee into a purchaser, but that if the debt is not yet mature it is to be considered whether, during the time of any probable delay, the present value of the property may not become depreciated from causes not known. Pingrey, p. 884.

There is a perfect analogy between the case of the mortgagee holding notes secured by the mortgage, or some of them, in his relation to the

mortgagor in possession committing waste upon the land, or the timber standing thereon, and that of the plaintiff towards M. D. Lane, mortgagee, and the defendant, his assignee, the latter being on the land and alleged to be wasting the timber. So that, the authorities cited apply to the facts of our case.

There can be no doubt, therefore, that the court has the power to protect the plaintiff's security against serious impairment. The defendant, when it acquired title to the timber from M. D. Lane, the original mortgagee, took it charged with the plaintiff's lien upon the timber, or his equity to have satisfaction of his debt out of it. It is a trustee to this extent for the plaintiff, and is guilty of a breach of his trust in committing waste by cutting timber and thus destroying the property it holds in trust, or impairing its value as a security.

This is not an action of trespass, wherein formerly it was required, and even now in some cases it is necessary, that plaintiff should allege and show insolvency of the defendant, or irreparable damage, in order to obtain an injunction against injury to land or timber. *Thompson v. Williams,* 54 N. C., 176; *Gause v. Perkins,* 56 N. C., 177; *Parker v. Parker,* 82 N. C., 165; *McCormick v. Nixon,* 83 N. C., 113; *Lumber Co. v. Wallace,* 93 N. C., 23. But the allegation of insolvency is no longer necessary where the unlawful and injurious act consists in a wrong, "continuous in its nature, or is the cutting or destruction of timber trees." Revisal, secs. 807, 808, 809. While those sections relate primarily to actions concerning title to land, or timber thereon, or to trespass committed by cutting timber and removing it from land, we are of the opinion that they apply, in principle, to a case like this one, where, though it be an action to foreclose a mortgage or deed of trust, it nevertheless indirectly involves a controversy as to the right or title to the timber, which is a part of the security, and the action is so analogous to the ones described in those sections as to come fairly within their equity. But we need not rely on them alone, as, independently of them, the plaintiff has a clear equity to have his security safeguarded by an order or decree of the court, so that it will not be in danger of destruction or substantial diminution, as we have already shown by reference to the authorities. While we are of the opinion that plaintiff is entitled to relief, we do not deem it necessary in this case, upon a review of the pleadings and affidavits, that resort should be had to so drastic a remedy as that of injunction, because we believe that the plaintiff's rights may be fully secured to him without seriously interfering with the operation of the defendant's extensive plant, which it has constructed at great expense to carry on the business of cutting and removing the timber for commercial purposes. Several of our cases justify a milder process for dealing with the matter, and we think it should be adopted, especially

as plaintiff has been somewhat slow, if not remiss, in prosecuting his right, and looking on while defendant; if his evidence be true, was investing large sums of money in his plant and business. This Court said, in *Ousby v. Neal,* 99 N. C., 146, where an injunction against cutting timber was the relief sought by the plaintiff: "The purpose of this action is to recover damages for the alleged trespasses mentioned in the complaint, and to perpetually enjoin the defendant from trespassing on the lands described. It is insisted by the plaintiffs that it was intended by the act just recited that, in trespasses of the character complained of, the injunction should not only issue, without any allegation of the insolvency of the defendant, but should be continued to the hearing. While the statute relieves plaintiffs of the necessity of alleging the insolvency of defendants in trespasses of the class named, we apprehend it was not the purpose of the law to limit the power of the court in the exercise of its discretion in making such orders as will protect the rights of all parties in respect to the subject-matter about which the litigation may be pending."

But the cases of *Lumber Co. v. Wallace,* 93 N. C., 22, and *Lewis v. Lumber Co.,* 99 N. C., 11, suggest a very appropriate procedure in such circumstances as those in this record, and one which is fair and just to both parties. In those decisions the Court substantially said: The defendant is extensively engaged in the manufacture of lumber, and prosecutes his business at great expense, having constructed a large plant and employed many laborers, etc., for the purpose of conducting it successfully. This work, being a legitimate one, should not be stopped by injunction if this can be avoided consistently with the rights of the plaintiff. It is against the policy of the law to restrain lawful industries and enterprises affecting the public interest, and it should not be done except in extreme cases, where there is no other way to proceed in the administration of justice. We therefore think that the court below, instead of granting the injunction, should have required the defendant to execute a bond in a sufficient amount and with approved security, payable to the plaintiff, with the condition inserted therein that the defendant will pay to the plaintiff such a sum as the court may finally adjudge to be due by him. The court may, if it deems it proper under the circumstances, appoint some person (called in those cases a receiver) to inspect the cutting and removal of the timber on the land described in the complaint, so as to ascertain its quantity, and to keep a true account thereof, and make report to the court at such time as may be required. If defendant does not give bond as directed by the court, the latter may make such other order as it may deem proper in the premises.

It cannot be successfully denied that if the plaintiff has the equity which he alleges in his complaint, he is entitled to have it enforced, and

if the defendant continues to do what he says he will do unless restrained by the court, the result will surely be that plaintiff's security for the payment of his notes will be gravely menaced, if not totally destroyed.

There was a contention of the defendant which should perhaps be noticed before closing this opinion, which was that when M. D. Lane purchased the equity of redemption from the mortgagor there was a merger of the legal and equitable title in him, but we do not see how this can be, or at least we may say there was not an entire merger, as the notes secured by the mortgage had been acquired by the plaintiff, and the mortgagee and mortgagor could not then defeat his equity or destroy his security under the mortgage. There will be a merger only to the extent that the mortgagee has acquired the equity, and his purchase of the equity of redemption will not constitute a complete merger unless he holds all of the debts secured by the mortgage. If any of the outstanding debts are held by others, their rights are preserved and remain intact, and the merger takes place, if at all, only subject to those rights or to the satisfaction of the unpaid debts. "Under the rules of law, the ordinary consequences of the purchase or acquisition of the equity of redemption in mortgaged premises by the mortgagee is to merge the two estates, vest the mortgagee with the complete title, and put an end to his rights or title under the mortgage. But to this end, it is necessary that, holding the mortgage already, he should acquire nothing less than the complete legal title in fee, and that the two estates or interests should unite in the same person in the same right. Further, this rule is not invariably applied in equity, but may be disregarded and the fusion of the two estates prevented when, in the particular case, this is required by justice, the well-established principles of equity, or the intention of the parties, the mortgagee having an election in equity to prevent a merger and keep the mortgage alive." 27 Cyc., 1377 (2). And again, at p. 1379, it is said: "If the holder of one of several bonds secured by the mortgage acquired the whole property, his bond is satisfied, *although the mortgage will continue as security for the holders of the other bonds,*" citing *Rotheschild v. Bay City Lumber Co.,* 139 Ala., 571, where it was held: "A grantee, under a duly-recorded deed, of the trees standing on the mortgaged land is not prejudiced in his right to redeem from the mortgage by the fact that the mortgagee, subsequent to such deed, took a deed of the land from the mortgagor." And it was held in *Stevenson and Woodruff v. Black,* 1 N. J. Eq. (1 Braxton), 338: "It is a general rule that where there is a bond and mortgage, the assignment of the bond operates as an assignment of the mortgage; the bond is the principal and the mortgage is the incident. Where a mortgagee assigns one of the bonds secured by the mortgage, retaining the mortgage himself, the assignee becomes equitably interested in the mortgage to the amount

of his debt or bond, and the holder of the mortgage a trustee for the assignee of the bond, *pro tanto.* His claim is upon the mortgage or the estate bound by the mortgage, and that claim remains, no matter in whose hands the estate may be. The assignee of the mortgage stands, *quoad,* in the shoes of the mortgagee; his rights and liabilities are the same, and not different. If a mortgagee, or assignee holding one of the bonds secured by a mortgage, becomes the purchaser of the equity of redemption, that part of the mortgage debt due to himself on the bond he holds is extinguished." It follows from the authorities that the equity of the plaintiff has not been at all impaired or affected by the transactions between the other parties. His rights are still superior to theirs.

There was error in the ruling of the learned judge. Let this case be remanded to the court below, with instructions to enter a decree in substantial agreement with that suggested in this opinion and founded on the two cases of *Lewis v. Lumber Co., supra* and *Lumber Co. v. Wallace, supra;* and, further, to make the mortgagor, Maxwell Brothers Lumber Company, and the mortgagee, M. D. Lane, parties, either plaintiffs or defendants, in the way provided by the statute, as it appears that they have, or may have, an interest in the result of the action.

It is so ordered.

Error.