FIRST PRESBYTERIAN CHURCH OF RALEIGH, NORTH CAROLINA, AND BOARD OF MANAGERS OF PEACE COLLEGE v. ST. ANDREWS PRESBYTERIAN COLLEGE, INC.

(Filed 24 May, 1961.)

**1. Injunctions § 13—**

Where plaintiff seeks injunctive relief upon allegations disclosing a grave controversy in regard to the subject matter, and it appears that if the matter is not held in *statu quo* plaintiff's primary equity, even though established upon the hearing, would be lost or irreparably impaired, while continuance of the status to the hearing would result in no injury to defendant which could not be compensated in money, the temporary order will be continued until the hearing upon the merits, since to do otherwise would be to determine the merits upon the hearing of the order to show cause.

**2. Colleges and Universities—**

Where, in the creation of a successor corporation to own and operate a denominational educational institution, it is expressly provided in the articles of incorporation that the operation of the institution should not be interrupted until opportunity had been given a particular church and Presbyteries of the denomination to resume control of the institution, and there is grave controversy as to whether the power to resume control was joint in the specified Presbyteries and the church, or whether the church alone, the Presbyteries having waived their right to resume control, could exercise such right, a temporary injunction is properly continued to the hearing upon the merits.

**3. Same:　Parties § 4—**

In an action between two denominational educational corporations to determine which has the right to operate a particular college and control its assets, the Board of Trustees of plaintiff is a proper party, since order authorizing such Board to continue control may be issued, and therefore motion of defendant to dismiss the action as to such Board is properly denied. The Synod controlling defendant is not a necessary party, and therefore motion of defendant that it be made a party is addressed to the discretion of the court.

APPEAL by defendant from *Bickett, J.,* in Chambers in WAKE on February 15, 1961.

This action was begun 12 January 1961 to obtain a judgment declaring the right of First Presbyterian Church of Raleigh, North Carolina (hereafter called Church), to reassume control of and to operate Peace College in Raleigh (hereafter called Peace) with the right of plaintiff Board of Managers of Peace (hereafter called Board) to operate Peace in Raleigh until the rights of Church have been determined.

Plaintiff Church filed a verified complaint setting forth factual allegations on which it based its asserted right to reassume control over the operation of Peace, notwithstanding a consolidation agreement between Presbyterian College for Men, Inc., Peace College, Inc., and Flora Macdonald College creating defendant. Plaintiff Board joined in the action "for the sole purpose of having the Court declare and determine its duties, responsibilities and obligations in connection with the operation of Peace College pending the final determination of this action. . ." It expressly averred that it was not taking sides but desired to perform its duties in accordance with the rights of the parties as determined by the court.

The complaint contained a prayer for injunctive relief to prevent defendant from interfering with the control and operation of Peace pending determination of Church's right to reassume control. When process issued, plaintiffs applied to Judge Carr, then presiding over the

courts of Wake County, for an injunction as prayed for in the complaint. He declined to issue the restraining order without notice to defendant. He entered an order directing the parties to appear before Judge Bickett, Resident Judge, on 21 January 1961. Process was served on defendant 18 January 1961. Judge Carr subsequently fixed the time for the hearing before Judge Bickett as 4 February 1961. On that date defendant moved to dismiss the action as to Board for that it was not a real party in interest. It also moved to make the Synod of North Carolina Presbyterian Church in the United States (hereafter called Synod) a party defendant. At the hearing before Judge Bickett defendant filed affidavits to support its assertion that Church had not made such showing as warranted the court in issuing an order preventing it from taking possession of the assets and exercising control and supervision over Peace.

Judge Bickett denied the motions made by defendant, made findings of fact on which he issued an order enjoining defendant from interfering with the control or operation of Peace pending a determination of the right of plaintiff Church to supervise and control. Defendant excepted to the findings of fact, the conclusions of law, and order based thereon, and appealed.

*Malcolm B. Seawell and Edward B. Hipp for plaintiff appellees.*
*Smith, Leach, Anderson & Dorsett for defendant appellant.*

RODMAN, J.  The questions for decision are these: (1) Was there error in granting the restraining order? (2) Was there error in denying the motions with respect to parties?

The law applicable to a decision of the first question was stated by the Supreme Court of the United States in *Ohio Oil Company v. Conway, Supervisor,* 279 U.S. 813, 73 L. ed. 972, in this language: "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted." This statement of the law was quoted with approval by this Court in *Restaurant, Inc. v. Charlotte,* 252 N.C. 324, 113 S.E. 2d 422, and *Castle v. Threadgill,* 203 N.C. 441, 166 S.E. 313.

*Walker, J.,* said in *Cobb v. Clegg,* 137 N.C. 153: "In the case of special injunctions the rule is not to dissolve upon the coming in of the answer, even though it may deny the equity, but to continue the injunction to the hearing if there is probable cause for supposing that

the plaintiff will be able to maintain his primary equity and there is a reasonable apprehenison of irreparable loss unless it remains in force, or if in the opinion of the court it appears reasonably necessary to protect the plaintiff's right until the controversy between him and the defendant can be determined. It is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right in *statu quo* until the determination of the controversy, and especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case." Recent applications of the rule appear in *Coach Lines v. Brotherhood,* 254 N.C. 60; *McDaniel v. Quackenbush,* 249 N.C. 31, 105 S.E. 2d 94; *Railroad v. Greensboro,* 247 N.C. 321, 101 S.E. 2d 347; *Edwards v. Hunter,* 246 N.C. 46, 97 S.E. 2d 463.

Defendant did not, by demurrer, challenge the sufficiency of the factual allegations to state a cause of action. It has not answered. It merely presented affidavits to establish facts which it insists completely negative plaintiff's assertion of a right to reassume control.

The evidence presented to Judge Bickett is sufficient to establish the following facts:

William Peace, an elder in Church in 1857, gave $10,000 to promote the education of women. This gift was the nucleus for the establishment of an educational institution for women. Its site is located on Peace Street in Raleigh.

In 1911 George Allen and others created a corporation known as Peace Institute, Inc. "for the purpose of providing for the higher education of women, under the name or style of 'Peace Institute, Inc.'" to be managed by a board not to exceed thirty trustees, two to be elected by Synod, two by each presbytery of Synod, and seven by the officers of Church, with a provision that if any presbytery failed to elect trustees, the other trustees might elect the additional members. Only five Presbyteries, Albemarle, Granville, Kings Mountain, Orange, and Wilmington, exercised the option accorded them to elect trustees.

In 1954 Peace College, Inc. was incorporated under the laws of North Carolina. It was created "for the purpose of conducting and perpetuating a Christian college under the name of Peace College for the higher education of women." Sec. 6 of the articles of incorporation provided: "The Board of Trustees of this Corporation shall not suspend the work of Peace College until ample opportunity is given to the First Presbyterian Church of Raleigh and the Presbyteries of

Albemarle, Granville, Kings Mountain, Orange, and Wilmington, which organizations exercised control of said Peace College up to the time this certificate of incorporation became effective, to reassume control of Peace College from the Synod of North Carolina of the Presbyterian Church in the United States."

In the summer of 1955 Synod adopted a report of its committee on educational institutions looking to the establishment of a college in the eastern section of North Carolina by the consolidation of Flora Macdonald College, Peace College, Inc., and Presbyterian Junior College for Men, Inc.

In conformity with the resolution of Synod, an agreement dated 17 December 1957 was executed by Presbyterian College for Men, Inc., Peace College, Inc., and Flora Macdonald College, creating a corporation known as Consolidated Presbyterian College, Inc., which name was thereafter changed to St. Andrews Presbyterian College, Inc.

The consolidation agreement recites the governing bodies of these three institutions had authorized the consolidation. It refers to the action of the board of trustees of Peace College, Inc., adopted 17 December 1957, authorizing its officials to execute the consolidation agreement. That resolution recited "that the work of the College would not be suspended until ample opportunity had been given to the original agencies to reassume control," and authorized the president and secretary of Peace to execute the consolidation agreement "provided that said agreement fully preserves any and all reassumption rights now vested in the First Presbyterian Church of Raleigh by paragraph 6 of the certificate of incorporation of Peace College, Inc."

The consolidation agreement` contains this language: "Provided, that this consolidation shall be subject to any and all reassumption rights now existing in the charter of any constituent or consolidating corporation in favor of the organization heretofore owning or exercising control of any said constituent corporation."

The quoted language must be read and interpreted in the light of the fact that each of the Presbyteries of Wilmington, Orange, Granville, and Kings Mountain had, prior to the adoption of the resolutions by the trustees of Peace authorizing consolidation, expressly released and waived any right or privilege which it had or might thereafter have "to reacquire or re-assume control of Peace College or any of its property whether by virtue of any provisions of the charter of Peace College, Inc., or otherwise."

Defendant insists that the right to reassume control was a joint right to be exercised only by the named Presbyteries and Church and

as the Presbyteries have expressly waived their rights, there is nothing left which authorizes Church to act.

Church, however, maintains that the parties contemplated and intended that the right reserved was several as well as joint; therefore Church had the right to reassume irrespective of the action of the Presbyteries. It asks: Why make any reference to the right to reassume control if no such right then existed or could thereafter arise because of the express waiver by the Presbyteries?

We express no opinion on the interpretation of the consolidation agreement. The meaning of the agreement, viewed in the light of the authority of the officials of Peace to execute it, must be determined at a trial on the merits. Our factual review is limited to the justification for continuing the restraining order to the final hearing.

It is manifest that if the educational institution now in operation in Raleigh is closed, and defendant is permitted to take all of the assets in August of this year, as it has announced it intends doing, those presently attending the college would be materially affected, and plaintiffs will find it difficult, if not impossible, to resume operations if the court, when the cause is heard on the merits, finds Church has a right to do so.

For the reasons given, we are of the opinion and hold that the court properly continued the restraining order to the hearing.

Since Peace is to continue to operate, the court properly authorized Board to exercise control. It may not be a necessary party but certainly it is a proper party.

Synod has not asked that it be made a party. It is the authority which controls and directs its agency, St. Andrews Presbyterian College, Inc., a body corporate. Clearly Synod is not a necessary party. Hence the court was not compelled to make it a party. The conclusion now reached is not intended to indicate how the court should rule if a motion directed to the court's discretion is hereafter made by Synod asking that it be made a party.

Affirmed.