A.E.P. INDUSTRIES, INC. v. R. BRUCE McCLURE

No. 445A82

(Filed 31 May 1983)

1. **Appeal and Error § 6.2— denial of preliminary injunction—immediate appeal**

    The denial of plaintiff's motion for a preliminary injunction to restrain defendant from breaching a covenant not to compete deprived plaintiff of a substantial right and was immediately appealable. G.S. 1-277; G.S. 7A-27.

2. **Courts § 21.8; Contracts § 7.1— covenants not to compete—applicable law—validity**

    Covenants not to compete in employment agreements were governed by the substantive law of New Jersey where the agreements contained a provision that they would be "governed by the laws of the State of New Jersey," and the covenants in question appear to be valid and enforceable under New Jersey law where they are in writing, are reasonable as to time and territory, were made a part of the contracts of employment, were based on reasonable consideration, and are designed to protect a legitimate business interest of plaintiff employer.

3. **Injunctions § 13.1— preliminary injunction—protection of plaintiff's rights**

    In determining whether a preliminary injunction should issue, the trial court's second inquiry is not limited to the question of irreparable injury. Rather, the injunction will issue if, in the opinion of the court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation.

4. **Injunctions § 6; Contracts § 7.1; Master and Servant § 11.1— restraining breach of covenant not to compete—right to preliminary injunction**

    The trial court should have allowed plaintiff's motion for a preliminary injunction to restrain defendant from breaching a covenant not to compete in an employment agreement where there was a reasonable likelihood that the covenant was valid and that plaintiff would likely prevail on the merits; the ultimate relief plaintiff sought was a permanent injunction to enforce the covenant not to compete; the decision made at the preliminary injunction stage of the proceedings became, in effect, a determination on the merits because of the brief duration of the time limitation of the covenant; plaintiff's principal relief was necessarily equitable in nature; and the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff.

5. **Injunctions § 13— right to preliminary injunction**

    Where the primary ultimate remedy sought is an injunction; where the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff; where no "legal" (as opposed to equitable) remedy will suffice; and where the decision to grant or deny a preliminary injunction in effect results in a determination on the merits, plaintiff has made a showing that the issuance of a preliminary injunction is necessary for the protection of its rights during the course of litigation.

---

A.E.P. Industries v. McClure

---

Justice MARTIN dissenting.

Justices COPELAND and EXUM join in this dissenting opinion.

PLAINTIFF appeals from a decision of the Court of Appeals, 58 N.C. App. 155, 293 S.E. 2d 232 (1982), affirming the denial of plaintiff's motion for a preliminary injunction entered by *Snepp, J.,* by order filed 2 December 1981 in Superior Court, MECKLEN-BURG County. Plaintiff appeals the decision of the Court of Appeals pursuant to G.S. § 7A-30(2).

The sole issue before us is whether the Court of Appeals erred in affirming the Superior Court's denial of plaintiff's motion for a preliminary injunction to restrain the defendant from breaching a covenant not to compete in an employment agreement. For the reasons set forth below, we hold that the plaintiff satisfied its burden pursuant to G.S. § 1-485 and is therefore entitled to the relief sought pending final determination on the merits.

The Record discloses the following facts:

Plaintiff is engaged in the manufacture and distribution of various polyethylene products throughout the United States. On 4 October 1976, the plaintiff hired the defendant as a sales representative to work out of plaintiff's North Carolina office. As a condition of this employment, and consistent with plaintiff's practice of protecting its confidential and proprietary information, defendant was required to execute a written agreement which provided, *inter alia,* that:

> In consideration of a) your continued employment of me; b) your payment to me of a salesman's bonus which you are not obligated to pay; c) the further development of my skills and an anticipated increase in my earnings potential while employed by your firm, . . . .
>
> . . . .
>
> 5. I hereby acknowledge that a) A.E.P. Industries, Inc. manufactures and processes products and sells them throughout the continental United States; b) A.E.P. Industries, Inc. salesmen employ personal mail and telephone solicitations extensively in the course of marketing products and developing

new customers for A.E.P. Industries, Inc.; and c) the names of A.E.P. Industries, Inc.'s customers and prospects are not generally known in the trade. As a consequence of the confidential nature of the customer and prospect lists, and other product, prices, sales and financial information which has been and will be made available to me in my employment by your firm, I will not, during the term of my employment and for a period of 18 months thereafter (regardless of the reason for the termination of my employment).

A. Directly or indirectly, as a sole proprietor, or as a principal, partner, stockholder, director, officer, employee, agent or other representative, engage, participate or become interested in, affiliated or connected with, be employed by or render service to, any corporation, firm, association, or other enterprise which shall market or sell the same or substantially similar products as those marketed or sold by A.E.P. Industries, Inc. at the time of the termination of my employment or within the 6 month period immediately preceding such termination.

B. Solicit for orders, accept orders from or service any customer of A.E.P. Industries, Inc. whom or which I contact personally, by mail or by telegraph, or serviced while employed by A.E.P. Industries, Inc.

C. Solicit for orders, accept orders from, or service any person, firm or other enterprise whom or which was a customer of A.E.P. Industries, Inc. during the term of my employment, whether or not such customer was personally solicited or serviced by me.

D. Solicit for orders, accept orders from, or service any prospects of A.E.P. Industries, Inc. whom or which I contacted personally, or whose names I learned of, during the term of my employment of A.E.P. Industries, Inc.

E. Disclose to any individual, firm, association, corporation or other enterprise, nor use for my own benefit, any business, trade, financial, customer, product or sales information which shall become known to me in the course of my employment by A.E.P. Industries, Inc. such information being deemed confidential to the extent not known generally in the trade.

F. I acknowledge that the remedies at law for the breach of any of the restrictive covenants contained in the immediately preceding paragraph shall be deemed to be inadequate and that A.E.P. Industries, Inc. shall be entitled to injunctive relief for any such breach.

After having worked for the plaintiff for approximately eight months, defendant was promoted to the position of sales manager. In this capacity defendant was responsible for the employment, training, and supervision of all of plaintiff's sales personnel in twelve southeastern states. Defendant had access to information concerning the manufacturing requirements of plaintiff's customers.

On 23 August 1979, defendant entered into a second written employment agreement with the plaintiff, the terms of which were substantially similar to the first agreement. The recited consideration in the 23 August agreement was $100.00. Furthermore, the second agreement expressly limited defendant's activities to "the area of the continental United States located east of the Mississippi River."

On 21 August 1981, plaintiff and defendant entered into an Agreement on Termination which provided, *inter alia*, that:

WHEREAS, A.E.P. is, in fact, engaged in the manufacture, production and distribution of various polyethylene plastic products throughout the United States, either directly or through one or more of its subsidiaries or affiliated companies; and

WHEREAS, the Employee has been employed for A.E.P. primarily in its plant location at Matthews, North Carolina for a significant period of time; and

WHEREAS, the employment by A.E.P. of the Employee will terminate as of the date hereof; and

WHEREAS, the Employee will be hired by an affiliated company, i.e., Design Poly Bag Corp., a New Jersey corporation; and

WHEREAS, the Employee acknowledges that in his capacity as an employee of A.E.P., he was necessarily provided with a great deal of confidential and proprietary informa-

tion of A.E.P., including names and addresses of customers of A.E.P. and product needs and pricing for same as well as all the other type of confidential and proprietary information described in a certain agreement entered into between the Employee and A.E.P. at the inception of his employment by A.E.P.; and

WHEREAS, the Employee has previously agreed and received consideration for such agreement not to engage in certain activities for a period of time subsequent to the termination of his relationship with A.E.P.; and

WHEREAS, the parties wish to enter into an additional and further agreement to return for the consideration herein expressed and the hiring by Design Poly Bag Corp. (an affiliated corporation with A.E.P.) of the Employee.

NOW, THEREFORE, the parties hereto do acknowledge, understand and agree as follows:

1. The Employee acknowledges previous employment by A.E.P. and his receipt and acquisition as Employee of vital, confidential and proprietary information from A.E.P. as described in the Agreement between the Employee and A.E.P. which commenced at the beginning of his employment. The Employee reacknowledges the receipt of good and valuable consideration for said earlier Agreement and reacknowledges and reaffirms the efficacy and continuing viability of same.

2. In consideration of the receipt of $20,000.00 in hand to be paid to the Employee by A.E.P. over such period of time as the parties may agree, or in consideration of the receipt of any portion of same, the Employee, Bruce McClure, agrees that he will not at any time hereafter use or disclose any proprietary information of A.E.P. which has been acquired by him directly and solely as a result of his previous employment by A.E.P. The Employee agrees that customer lists and prospective lists of customers together with addresses of same, products acquired by same, price information on customers and sales and financial information of A.E.P. and all items of confidential and proprietary information are included within this Agreement. Not by way of limitation, but

by way of example, attached hereto is a list of customers of A.E.P. Industries, Inc. whose names have been disclosed to Employee. Except for the business of Design Poly Bag Corp. (an affiliated corporation of A.E.P.) the Employee will not, under any circumstances, contact or communicate with any representative, officer, principal, agent or employee of the customers of A.E.P. whose names have been made known to the Employee and some of those names are set forth on the attached list.

3. The Employee reaffirms and reacknowledges all of the representations and acknowledgements previously set forth in an earlier agreement between A.E.P. and the Employee.

This third agreement included a covenant not to compete similar to that in the two earlier agreements, the geographic limitation encompassing areas "within a radius of 300 miles of the location at which any of A.E.P.'s offices, regional or otherwise, may be located."

With respect to defendant's subsequent employment with Design Poly Bag Corp., the Record includes a memo indicating that defendant was to receive compensation as follows:

Subject: Compensation Agreement

    I. 1st year commencing 8/21/81 for 52 wks.
       Compensation — $42,500 total

        A) A.E.P. — $20,000 to be paid in 52 equal installments in consideration for the attached contract — no payroll deduction.

        B) Design — $22,500 draw to be paid weekly for the 1st yr. — no payroll deduction.

Other compensation 1st yr. only:

        C) A.E.P. to provide the continued use of company car.

        D) Design telephone expense to be billed directly to Design.

        E) $100.00 to be paid once in consideration of Design employment agreement.

F) Office space to be provided and paid for by Design at $250.00 per month.

Commissions: To be paid at a rate of 5% of total net sales after $850,000 in sales commencing 8/21/81 and the subsequent 52 wks. to be paid monthly.

II. 2nd year

A) Commission to be based on a straight 5% of sales and to be paid monthly subject to change based on increases and decreases in selling price. (Draw against commissions may be arranged on a mutually agreeable basis.)

B) Design—to provide office space.

C) All other expenses to be salesman's responsibility.

Defendant, however, alleges by affidavit that upon his termination with plaintiff, he was offered six months "severance" pay of one-half of his annual salary of $42,000.00, in addition to a one year contract with Design Poly Bag at the same salary he was earning with the plaintiff. He denied ever having seen the memo concerning his new employment until after he had executed the 21 August 1981 Agreement on Termination.

Defendant resigned from Design Poly Bag on 18 September 1981. In violation of the 23 August 1979 and the 21 August 1981 agreements, defendant immediately began contacting several of the companies with which he had formerly been dealing as a salesman and sales manager for plaintiff. At least two of these (Chatham Manufacturing in Elkin, N. C., and Reeves Bros. Inc. of Cornelius, N. C.) appeared on the list of customers attached to the 21 August Agreement on Termination.

Plaintiff brought suit against defendant on grounds that defendant was breaching covenants contained in the agreements of 23 August 1979 and 21 August 1981. In conjunction with this suit, plaintiff's motion for a temporary restraining order to stop defendant from breaching the covenants was granted 22 October 1981. By consent of the parties, this order remained in effect until 17 November 1981. On 20 November 1981, Judge Snepp entered an order continuing the restraining order. The court ruled on

plaintiff's motion for a preliminary injunction pending the outcome of the litigation on 30 November 1981. Judge Snepp denied plaintiff's motion and dissolved the temporary restraining order first entered 22 October 1981, conceding that there was "probable cause to believe that the plaintiff may prevail at the hearing," but that plaintiff had "failed to establish through its evidence the reasonable likelihood of any substantial monetary damage." Plaintiff appealed the denial of its motion for a preliminary injunction to the Court of Appeals, which affirmed in an opinion to which Judge Webb dissented.

*Bell, Seltzer, Park & Gibson, by James D. Myers and Ronald T. Lindsay, for plaintiff-appellant.*

*Elam, Seaford, McGinnis & Stroud, by Keith M. Stroud, for defendant-appellee.*

MEYER, Justice.

[1] A preliminary injunction is interlocutory in nature, issued after notice and hearing, which restrains a party pending final determination on the merits. G.S. § 1A-1, Rule 65. Pursuant to G.S. § 1-277 and G.S. § 7A-27, no appeal lies to an appellate court from an interlocutory order or ruling of a trial judge unless such order or ruling deprives the appellant of a substantial right which he would lose absent a review prior to final determination. As we recently stated in *State v. School,* 299 N.C. 351, 357-58, 261 S.E. 2d 908, 913, *appeal dismissed,* 449 U.S. 807 (1980):

> The purpose of a preliminary injunction is ordinarily to preserve the *status quo* pending trial on the merits. Its issuance is a matter of discretion to be exercised by the hearing judge after a careful balancing of the equities. Its impact is temporary and lasts no longer than the pendency of the action. Its decree bears no precedent to guide the final determination of the rights of the parties. In form, purpose, and effect, it is purely interlocutory. Thus, the threshold question presented by a purported appeal from an order granting a preliminary injunction is whether the appellant has been deprived of any substantial right which might be lost should the order escape appellate review before final judgment. If no such right is endangered, the appeal cannot be maintained. (Citations omitted.)

*See Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E. 2d 338 (1978); *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348 (1975).

The Court of Appeals did not consider the appealability of this interlocutory order. There is little doubt that the denial of the motion for a preliminary injunction in this case deprived plaintiff of a substantial right. In fact, as of the filing of this opinion, plaintiff has essentially lost its case because the eighteen month time limitation under the employment agreements expired in March of 1983. Likewise, as the trial judge noted in his order, had the preliminary injunction been granted, "the plaintiff would in effect have prevailed in the action no matter what the final determination might be." Thus, it appears that in a case such as the one now under consideration, although involving a substantive right of the appealing party, where time is of the essence, the appellate process is not the procedural mechanism best suited for resolving the dispute. The parties would be better advised to seek a final determination on the merits at the earliest possible time. Nevertheless, because this case presents an important question affecting the respective rights of employers and employees who choose to execute agreements involving covenants not to compete, we have determined to address the issues.

As a general rule, a preliminary injunction

is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation. *Waff Bros., Inc. v. Bank*, 289 N.C. 198, 221 S.E. 2d 273; *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348; *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619.

*Investors, Inc. v. Berry*, 293 N.C. 688, 701, 239 S.E. 2d 566, 574 (1977).

The first stage of the inquiry is, therefore, whether plaintiff is able to show likelihood of success on the merits. In the present case, the trial judge conceded "that there is probable cause to believe the plaintiff may prevail at the hearing" and that "plain-

tiff makes out an apparent case for issuance of a temporary injunction by showing some recognized equity." Thus the trial court found that there was a reasonable likelihood that the agreements were reasonable and valid and that plaintiff would likely prevail on the merits.

[2]   We note that on appeal from an order of superior court granting or denying a preliminary injunction, an appellate court is not bound by the findings, but may review and weigh the evidence and find facts for itself. *Pruitt v. Williams*, 288 N.C. 368, 218 S.E. 2d 348; *Telephone Co. v. Plastics, Inc.*, 287 N.C. 232, 214 S.E. 2d 49 (1975); *Huskins v. Hospital*, 238 N.C. 357, 78 S.E. 2d 116 (1953). Plaintiff questioned before the trial court and before the Court of Appeals the effect of a provision in the employment agreements that the agreements would be "governed by the laws of the State of New Jersey." Thus, we must first consider 1) whether the agreements, are, in fact, governed by New Jersey law, and 2) if so, whether there is a likelihood that plaintiff will prevail on the merits in light of New Jersey law.

As to the first question, we stated in *Land Co. v. Byrd*, 299 N.C. 260, 262, 261 S.E. 2d 655, 656 (1980), that "where parties to a contract have agreed that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." We note that plaintiff is a New Jersey corporation with headquarters in New Jersey and that during his employment, the defendant had numerous contacts with the New Jersey office. We therefore hold that the substantive law of New Jersey is applicable to the interpretation of the agreements.

Our review of New Jersey law in the area of the validity and enforceability of covenants not to compete indicates that the governing principles are similar to those in North Carolina. In this State a covenant not to compete is valid and enforceable upon a showing that it is:

    1. In writing.

    2. Made part of a contract of employment.

    3. Based on reasonable consideration.

4. Reasonable both as to time and territory.

5. Not against public policy.

*U-Haul Co. v. Jones*, 269 N.C. 284, 152 S.E. 2d 65 (1967); *Exterminating Co. v. Griffin and Exterminating Co. v. Jones*, 258 N.C. 179, 128 S.E. 2d 139 (1962); *Asheville Associates v. Miller and Asheville Associates v. Berman*, 255 N.C. 400, 121 S.E. 2d 593 (1961); *Scott v. Gillis*, 197 N.C. 223, 148 S.E. 315 (1929).

The seminal case in New Jersey recognizing the validity and enforceability of noncompetitive clauses in employment agreements is *Solari Industries, Inc. v. Malady*, 55 N.J. 571, 264 A. 2d 53 (1970), where that court stated that:

> . . . while a covenant by an employee not to compete after the termination of his employment is not, because of the countervailing policy considerations, as freely enforceable, it will nonetheless be given effect if it is reasonable in view of all the circumstances of the particular case. It will generally be found to be reasonable where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public . . . .

*Id.* at 576, 264 A. 2d at 56.

As in North Carolina, the New Jersey courts have considered, as a prerequisite to the enforceability of noncompetitive employment agreements:

1. Whether the covenant is reasonable as to time and territory. *Mailman, Ross, etc. v. Edelson*, 183 N.J. Super. 434, 444 A. 2d 75 (1982).

2. Whether it is made a part of a contract of employment and based on reasonable consideration. *Hogan v. Bergen Brunswig Corp.*, 153 N.J. Super. 37, 378 A. 2d 1164 (1977).

3. Whether the covenant is against public policy or unreasonable. *Ellis v. Lionikis*, 162 N.J. Super. 579, 394 A. 2d 116 (1978) (invalid where the sole purpose is to prevent competition rather than protect a legitimate interest of the employer).

4. Whether the employee has, in fact, violated the terms of the covenant. *Mailman, Ross, etc. v. Edelson*, 183 N.J. Super. 434, 444 A. 2d 75.

For North Carolina cases *see Enterprises, Inc. v. Heim*, 276 N.C. 475, 173 S.E. 2d 316 (1970); *Jewel Box Stores v. Morrow*, 272 N.C. 659, 158 S.E. 2d 840 (1968); *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154 (1930); *Schultz and Assoc. v. Ingram*, 38 N.C. App. 422, 248 S.E. 2d 345 (1978); *Amdar, Inc. v. Satterwhite*, 37 N.C. App. 410, 246 S.E. 2d 165, *disc. rev. den.* 295 N.C. 645 (1978).

On the Record before us, we agree that there is a reasonable likelihood that the plaintiff will prevail at the hearing on the merits. The covenant appears to be valid and enforceable. It is in writing, reasonable as to time and territory, was made a part of the contracts of employment, was based on reasonable consideration, and is designed to protect a legitimate business interest of the plaintiff. As a general rule, courts have denied the primary relief of enforcement where the agreement itself is found to be harsh, unjust, unreasonable or void; that is, where the agreement fails to satisfy one or more of the criteria insuring its validity. *See* 43A C.J.S. Injunctions § 95 (1978). In every case where the covenant not to compete is found to be reasonable and valid, however, the plaintiff is entitled to a remedy; either the agreement must be enforced or the court must find that plaintiff has an adequate remedy at law for money damages.

The trial court, having determined that the plaintiff would likely prevail on the merits, nonetheless found that:

In this case the plaintiff's evidence does not establish prima facie a case of irreparable damage. All of the statements contained in the complaint and affidavit are conclusory and the only inference which can be drawn is that the damages, if any, which will be sustained by the plaintiff are speculative and conjectural. In view of the evidence as to the manner in which the sales of polyethylene are carried out, I cannot find that the plaintiff would as the result of defendant's activity sustain any damage, reparable or irreparable.

However, even though a plaintiff makes out an apparent case for issuance of a temporary injunction by showing some recognized equity, a Court must nevertheless exercise its

sound discretion in determining whether the writ should issue, and to this end weigh the conflicting affidavits relative to the conveniences and inconveniences which would result from the issuance of the writ and the Court should refuse to grant the writ when to do so would cause great injury to the defendant and confer little benefit in comparison upon the plaintiff. *Huskins v. Hospital,* 238 N.C. 357.

In light of this I find that balancing the equities, the defendant would be caused tremendous injury by issuance of the injunction.

The Court of Appeals agreed with the trial court, holding that "the trial court did not abuse its discretion in denying the injunction based on inadequate showing of irreparable harm to plaintiff . . . ." *A.E.P. Industries v. McClure,* 58 N.C. App. at 158, 293 S.E. 2d at 234.

[3] We first emphasize that in determining whether a preliminary injunction should issue, the trial court's second inquiry is not limited to the question of irreparable injury. The injunction will issue "if, in the opinion of the Court, issuance is necessary *for the protection of a plaintiff's rights during the course of litigation." Investors, Inc. v. Berry,* 293 N.C. at 701, 239 S.E. 2d at 574 (emphasis added).

We further note that there are two important aspects of this case which distinguish it substantively and procedurally from the more usual case in which a preliminary injunction is sought. The first is that the ultimate relief plaintiff seeks is *enforcement* of a covenant not to compete. The promised performance by the employee is forbearance to act and the remedy is one for specific performance of the contract in the nature of an injunction prohibiting any further violation of it. *See U-Haul Co. v. Jones,* 269 N.C. 284, 152 S.E. 2d 65; 5A Corbin on Contracts § 1138 (1964).

The second distinguishing feature of this case is that the decision made at the preliminary injunction stage of the proceedings becomes, in effect, a determination on the merits. This is so because the validity of the covenant depends, among other things, on the duration of the time limitation which, in order to be reasonable, must be brief. The case is clothed with immediacy. Frequently the time limitation will have expired prior to final

determination. Moreover, because the primary relief sought by the plaintiff is a permanent injunction, many of the considerations involved in the decision to grant or deny the preliminary injunction parallel those involved in a final determination on the merits. Specifically, the court must decide whether the remedy sought by the plaintiff is the most appropriate for preserving and protecting its rights or whether there is an adequate remedy at law.

We recognize that injunctive relief is equitable in nature and that some courts, in weighing the equities, have determined that because plaintiff can obtain full and complete justice by a judgment for money damages, and because hardship to the defendant outweighs any hardship to the plaintiff, plaintiff has not met his burden of showing that it has or is likely to sustain irreparable injury. 43A C.J.S. Injunctions § 95. The focus in cases such as the one now under consideration, however, is not only whether plaintiff has sustained irreparable injury, but, more important, whether the issuance of the injunction is necessary for the protection of plaintiff's rights during the course of litigation; that is, whether plaintiff has an adequate remedy at law.

Plaintiff argues persuasively, and there is authority to support the argument, that in a "noncompetition agreement, breach is the controlling factor and injunctive relief follows almost as a matter of course; damage from the breach is presumed to be irreparable and the remedy at law is considered inadequate. It is not necessary to show actual damage by instances of successful competition, but it is sufficient if such competition, in violation of the covenant, may result in injury." 43A C.J.S. Injunctions § 95. In fact, the agreements which defendant signed each contain the following language, which has been recognized as evidence of the inadequacy of money damages. See Amdar, Inc. v. Satterwhite, 37 N.C. App. 410, 246 S.E. 2d 165, disc. rev. den. 295 N.C. 645 (1978).

> I acknowledge that the remedies at law for the breach of any of the restrictive covenants contained in the immediately preceding paragraph shall be deemed to be inadequate and that A.E.P. Industries, Inc. shall be entitled to injunctive relief for any such breach.

It is a basic principle of contract law that one factor used in determining the adequacy of a remedy at law for money damages is the difficulty and uncertainty in determining the amount of

damages to be awarded for defendant's breach. *See* 5A Corbin on Contracts § 1142. Thus, "injury is irreparable where the damages are estimable only by conjecture, and not by any accurate standard." 42 Am. Jur. 2d *Injunctions* § 49 (1969). In fact, in holding that a plaintiff was entitled to injunctive relief for breach of a covenant not to compete, this Court characterized as "untenable" the argument that a contract provision for liquidated damages provided an adequate remedy at law. *U-Haul Co. v. Jones*, 269 N.C. at 287, 152 S.E. 2d at 67. This Court has further held that "[t]o constitute irreparable injury it is not essential that it be shown that the injury is beyond the possibility of repair or possible compensation in damages, but that the injury is one *to which the complainant should not be required to submit or the other party permitted to inflict*, and is of such continuous and frequent recurrence that no reasonable redress can be had in a court of law." *Barrier v. Troutman*, 231 N.C. 47, 50, 55 S.E. 2d 923, 925 (1949) (emphasis added).

We cannot agree with the implication of the decisions below that although plaintiff is legally entitled to some measure of relief, it nevertheless has no remedy in law or in equity. Those decisions seem to imply that plaintiff, unable to assign a determinable value to defendant's competitive practices, has no adequate remedy at law. And because it has sustained no "damage, reparable or irreparable," equitable relief, too, is foreclosed. Yet plaintiff has been given a legally recognizable right to reasonable protection against competition:

'Courts scrutinize carefully all contracts limiting a man's natural right to follow any trade or profession anywhere he pleases and in any lawful manner. But it is just as important to protect the enjoyment of an establishment in trade or profession, which its possessor has built up by his own honest application to every-day duty and the faithful performance of the tasks which every day imposes upon the ordinary man. What one creates by his own labor is his. Public policy does not intend that another than the producer shall reap the fruits of labor. Rather it gives to him who labors the right by every legitimate means to protect the fruits of his labor and secure the enjoyment of them to himself. Freedom to contract must not be unreasonably abridged. Neither must the

right to protect by reasonable restrictions that which a man by industry, skill and good judgment has built up, be denied.'

*Scott v. Gillis*, 197 N.C. 223, 228, 148 S.E. 315, 317-318 (1929). *See Enterprises, Inc. v. Heim*, 276 N.C. 475, 173 S.E. 2d 316; *Jewel Box Stores v. Morrow*, 272 N.C. 659, 158 S.E. 2d 840. Plaintiff was clearly entitled to ultimate equitable relief—the enforcement of the covenant prohibiting defendant from engaging in competitive practices within the time and territory specified, assuming that the agreement was found to be valid and legally binding:

> The general rule with respect to enforceable restrictions is stated in 9 A.L.R. 1468: 'It is clear that if the nature of the employment is such as will bring the employee in personal contact with patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons and customers of his former employer, and thereby gain an unfair advantage, equity will interpose in behalf of the employer and restrain the breach . . . providing the covenant does not offend against the rule that as to time . . . or as to the territory it embraces it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer.'

*Asheville Associates v. Miller and Asheville Associates v. Berman*, 255 N.C. at 403-404, 121 S.E. 2d at 595. *See Enterprises, Inc. v. Heim*, 276 N.C. 475, 480, 173 S.E. 2d 316, 320; *Moskin Bros. v. Swartzberg*, 199 N.C. 539, 155 S.E. 154.

[4] Having thus determined that plaintiff's principal relief was properly and necessarily equitable in nature in the form of an injunction to enforce the covenant, we hold that plaintiff was entitled to a preliminary injunction. Beginning with *Cobb v. Clegg*, 137 N.C. 153, 49 S.E. 80 (1904), this Court has consistently adhered to the proposition that where the principal relief sought is a permanent injunction, it is particularly necessary that the preliminary injunction issue. In speaking of the distinction between the old forms of common injunctions and special injunctions, this Court wrote:

The former was granted in aid of or as secondary to another equity, as in the case of an injunction to restrain proceedings at law in order to protect and enforce an equity which could not be pleaded, and is issued, of course, upon the coming in of the bill, without notice. As soon as the defendant answered he could move to dissolve the injunction, and it was then for the court, in the exercise of its sound discretion, to say whether, on the facts disclosed by the answer, or, as it is technically termed, upon the equity confessed, the injunction should be dissolved or continued to the hearing. If the facts constituting the equity were fully and fairly denied, the injunction was dissolved unless there was some special reason for continuing it. Not so with a special injunction, which is granted for the prevention of irreparable, injury, when the preventive aid of the court of equity is the ultimate and only relief sought and is the primary equity involved in the suit. In the case of special injunctions the rule is not to dissolve upon the coming in of the answer, even though it may deny the equity but to continue the injunction to the hearing if there is probable cause for supposing that the plaintiff will be able to maintain his primary equity and there is a reasonable apprehension of irreparable loss unless it remains in force, or if in the opinion of the court it appears reasonably necessary to protect the plaintiff's right until the controversy between him and the defendant can be determined. It is generally proper, when the parties are at issue concerning the legal or equitable right, to grant an interlocutory injunction to preserve the right *in statu quo* until the determination of the controversy, and *especially is this the rule when the principal relief sought is in itself an injunction, because a dissolution of a pending interlocutory injunction, or the refusal of one, upon application therefor in the first instance, will virtually decide the case upon its merits and deprive the plaintiff of all remedy or relief, even though he should be afterwards able to show ever so good a case.*

*Id.* at 158-59, 49 S.E. at 82-83 (emphasis added). *Pleaters, Inc. v. Kostakes*, 259 N.C. 131, 129 S.E. 2d 881 (1963); *Finance Company v. Jordan*, 259 N.C. 127, 129 S.E. 2d 882 (1963); *Church v. College*, 254 N.C. 717, 119 S.E. 2d 867 (1961); *Coach Lines v. Brotherhood*, 254 N.C. 60, 118 S.E. 2d 37 (1961); *Studios v. Goldston*, 249 N.C.

117, 105 S.E. 2d 277 (1958) (plaintiff was entitled to have a temporary restraining order continued as a matter of law); *Boone v. Boone*, 217 N.C. 722, 9 S.E. 2d 383 (1940).

[5]  Because of the need for immediacy of appropriate relief in cases dealing with covenants not to compete, as for example in the present case where defendant contracted not to engage in a competitive business for only eighteen months, the law as stated above is particularly applicable. We hold that where the primary ultimate remedy sought is an injunction; where the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff; where no "legal" (as opposed to equitable) remedy will suffice; and where the decision to grant or deny a preliminary injunction in effect results in a determination on the merits, plaintiff has made a showing that the issuance of a preliminary injunction is necessary for the protection of its rights during the course of litigation.

Finally, we believe that our holding is in accordance with the policy of our State to encourage growth in new "high tech" industry. "The rapid technological advances accompanying North Carolina's industrial growth and increased employment opportunities, especially for technical and professional occupations, gives added significance and immediacy to the problem of the enforceability of covenants not to compete contained in employment contracts." H. Constangy, Employment Contract Covenants Not to Compete: Enforceability Under North Carolina Law, 10 Wake Forest L. Rev. 217 (1974).

While plaintiff here has been denied the effective equitable relief to which it was entitled (the preliminary injunction), since the eighteen month restriction has now completely elapsed, there still remains the plaintiff's other claims for relief including a claim for substantial money damages.

The decision of the Court of Appeals is reversed and the case is remanded to that court for remand to the Superior Court, Mecklenburg County, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice MARTIN dissenting.

The questions raised by this appeal are now moot and the appeal should be dismissed. *Fulton v. Morganton,* 260 N.C. 345, 132 S.E. 2d 687 (1963). "It is quite obvious that a court cannot restrain the doing of that which has been already consummated." *Austin v. Dare County,* 240 N.C. 662, 663, 83 S.E. 2d 702, 703 (1954). The contract sued upon specified that the defendant would not compete with plaintiff for a period of eighteen months after the date on which he ceased to be employed by plaintiff. A.E.P. Industries, Inc. summarily fired defendant on 4 August 1981. The non-competitive eighteen-month period expired at the latest on 18 March 1983.[1] Even if plaintiff were entitled to an injunction, which I maintain it is not, it would be an abuse of discretion for any court to issue a preliminary injunction restraining defendant after the expiration of the period specified in the agreement. The eighteen-month period of the covenant not to compete is now *fait accompli.* This being so, there is nothing to support the issuance of an injunction at this time. *Highway Com. v. Brown,* 238 N.C. 293, 77 S.E. 2d 780 (1953). A similar case is *Herff Jones Co. v. Allegood,* 35 N.C. App. 475, 241 S.E. 2d 700 (1978), in which Judge Morris, with Judge (now Justice) Mitchell concurring, held for the court that when a covenant not to compete for twelve months expired while the case was on appeal, the issue became moot and was no longer before the court for decision:

> The covenant not to compete which is the subject of this action was expressly limited in duration to one year following the termination of the employment relationship between plaintiff and defendants. Plaintiff's evidence shows that notice of termination of representation was mailed to defendants and dated 28 July 1976. Defendant Allegood testified that he began working for Hunter Publishing Company, a competitor of plaintiff, as early as April 1976. Thus, assuming that defendants' employment ended no later than 28 July 1976, the latest date through which defendants could be restrained from competing with plaintiff would have been 28

---

1. Defendant left the employment of Design Poly-Bag Corp., an affiliated company of plaintiff, on 18 September 1981. Assuming for the sake of argument that defendant's termination agreement with A.E.P. applied to his employment with Design Poly-Bag, the eighteen-month period would have expired 18 March 1983.

July 1977. That date having passed pending consideration of this appeal by this Court, the questions relating to the propriety of the injunctive relief granted below are not before us. As stated by the Supreme Court in *Parent-Teacher Assoc. v. Bd. of Education,* 275 N.C. 675, 679, 170 S.E. 2d 473, 476 (1969):

> "When, pending an appeal to this Court, a development occurs, by reason of which the questions originally in controversy between the parties are no longer at issue, the appeal will be dismissed for the reason that this Court will not entertain or proceed with a cause merely to determine abstract propositions of law or to determine which party should rightly have won in the lower court."

Thus, the questions raised by defendants regarding the injunctive relief granted by the trial court have been rendered moot by the passage of time. *See Enterprises, Inc. v. Heim,* 276 N.C. 475, 173 S.E. 2d 316 (1970).

*Id.* at 478-79, 241 S.E. 2d at 702. *See also* 42 Am. Jur. 2d *Injunctions* §§ 6, 7 (1969). The appeal should be dismissed.

However, the majority has seen fit to examine the moot issue, which is whether the Court of Appeals erred in affirming the superior court's denial of A.E.P.'s motion for a preliminary injunction restraining Bruce McClure from breaching certain covenants contained in agreements between the two parties. For the following reasons, I dissent from the majority's resolution of the issue.

As stated in *Investors, Inc. v. Berry,* 293 N.C. 688, 701, 239 S.E. 2d 566, 574 (1977):

> A preliminary injunction, the relief here sought, is an extraordinary measure taken by a court to preserve the status quo of the parties during litigation. It will be issued only (1) if a plaintiff is able to show *likelihood* of success on the merits of his case and (2) if a plaintiff is likely to sustain irreparable loss unless the injunction is issued, or if, in the opinion of the Court, issuance is necessary for the protection of a plaintiff's rights during the course of litigation. *Waff Bros., Inc. v. Bank,* 289 N.C. 198, 221 S.E. 2d 273; *Pruitt v. Williams,* 288

N.C. 368, 218 S.E. 2d 348; *Conference v. Creech,* 256 N.C. 128, 123 S.E. 2d 619.

A preliminary injunction may not issue unless the movant carries the burden of persuasion as to each of these prerequisites. *E.g., Pruitt v. Williams,* 288 N.C. 368, 218 S.E. 2d 348 (1975). Once this burden in carried, it still remains in the trial court's discretion whether to grant the motion for a preliminary injunction. *Id. Cf.* N.C. Gen. Stat. § 1-485 (Cum. Supp. 1981). As Justice Ervin stated in *Huskins v. Hospital,* 238 N.C. 357, 360, 78 S.E. 2d 116, 119-20 (1953):

> The hearing judge does not issue an interlocutory injunction as a matter of course merely because the plaintiff avowedly bases his application for the writ on a recognized equitable ground. While equity does not permit the judge who hears the application to decide the cause on the merits, it does require him to exercise a sound discretion in determining whether an interlocutory injunction should be granted or refused.

I emphasize at the outset that a motion for a preliminary injunction is not to be confused with a request for specific enforcement of a provision in a contract which has been proven valid and enforceable. The former is a request for *extraordinary equitable relief* pending resolution of the controversy between the litigants. The latter arises after a contract has been either stipulated or proven valid and enforceable and the movant has established his right to have the contract enforced. Although defendant has not yet filed answer in this suit, the record suggests that the validity and enforceability of these contracts is a matter of dispute between the parties and will ultimately be resolved at trial on the merits. In the present appeal, of course, this Court is concerned only with plaintiff's motion for a preliminary injunction, that is, whether the trial court abused its discretion in denying the motion for equitable relief.

Although it conceded that there may be probable cause that plaintiff would prevail on the merits of the controversy, the trial court determined that A.E.P. had not carried its burden of persuasion as to irreparable damage. In its order denying plaintiff's motion for a preliminary injunction, the court stated:

In this case the plaintiff's evidence does not establish prima facie a case of irreparable damage. All of the statements contained in the complaint and affidavit are conclusory and the only inference which can be drawn is that the damages, if any, which will be sustained by the plaintiff are speculative and conjectural. In view of the evidence as to the manner in which the sales of polyethylene are carried out, I cannot find that the plaintiff would as the result of defendant's activity sustain any damage, reparable or irreparable.

Thus, because plaintiff failed to carry its burden of persuasion as to irreparable loss, a fortiori it failed to establish a reasonable apprehension of irreparable loss unless interlocutory relief was granted. Although in reviewing the denial of a preliminary injunction this Court is not bound by the findings of the lower court, *Waff Bros. v. Bank*, 289 N.C. 198, 221 S.E. 2d 273 (1976); *Telephone Co. v. Plastics, Inc.*, 287 N.C. 232, 214 S.E. 2d 49 (1975), there is a presumption that the lower court's decision was correct, and the burden is on the appellant to show error. *Conference v. Creech*, 256 N.C. 128, 123 S.E. 2d 619 (1962). For the following reasons, I agree with the lower court's finding that plaintiff failed to establish a reasonable apprehension of irreparable loss unless its motion was granted.

An applicant for a preliminary injunction must do more than allege that he is apprehensive that irreparable loss will occur. He is required to set out with particularity the facts supporting his allegations so that the court can decide for itself whether there is reasonable apprehension of irreparable injury unless interlocutory relief is granted. *Telephone Co. v. Plastics, Inc., supra; Pharr v. Garibaldi*, 252 N.C. 803, 115 S.E. 2d 18 (1960). A prohibitory preliminary injunction, such as the one sought in the instant case, will be granted only when irreparable injury is real and immediate. *Telephone Co. v. Plastics, Inc., supra; Membership Corp. v. Light Co.*, 256 N.C. 56, 122 S.E. 2d 761 (1961).

In its motion for a preliminary injunction, plaintiff stated that its customer lists and order specifications were confidential and proprietary information; that defendant was using this information in breach of contractual covenants; that defendant has contacted a number of plaintiff's customers, which customers accounted for ten to fifteen percent of A.E.P.'s annual sales within

the southeastern region; and that defendant had solicited sales and orders of products not produced by A.E.P. which were directly competitive with A.E.P.'s products, thus breaching contractual covenants not to compete. Plaintiff's sole affiant also stated:

> It is my honest belief that the defendant is utilizing confidential information of the plaintiff by and in contacting such major customers of the plaintiff. Such activities of the defendant are highly damaging to the plaintiff's sales program, which was established through the expenditure of great effort and finances, and are also leading to damaging confusion by these customers in that the defendant was employed by the plaintiff until August 21 of this year, so that such customers contacted no doubt consider him to still represent the plaintiff.

> . . . If the defendant continues such activities, not only will the sales program of the plaintiff suffer irreparable damage, but also the confidential nature of the information which the defendant is utilizing will be seriously jeopardized.

In reply, in addition to his own affidavit, defendant submitted the affidavits of sales or managerial employees associated with six of A.E.P.'s customers that defendant had contacted after leaving plaintiff's employment. These employees generally concurred in stating that Mr. McClure had contacted them after he left Design Poly-Bag; that he had informed them that he had ceased working for A.E.P. and was in business for himself; that neither lists of product specifications nor customer lists were secret or confidential in the sales and manufacturing market for polyethylene products; and that the market operated on a competitive bid or quote system in which, after the submission of bids from salesmen who had studied product specifications, the decision of with whom to place an order was based on a number of factors, including reliability, service, quality, and price. Several of these employees stated that they had placed trial orders with McClure after receiving bids from him; others stated that McClure had merely expressed an interest in doing business with their companies.

I agree with the superior court that while defendant's conduct may or may not have been in breach of contract, plaintiff has failed to set forth with enough particularity facts allowing the conclusion that there is reasonable apprehension of *irreparable* in-

jury unless a preliminary injunction is granted. To demonstrate a reasonable apprehension of irreparable injury, one must show that irreparable injury is very likely to occur if injunctive relief is not granted. In this context an injury is irreparable if it cannot be adequately compensated in money damages. *E.g., Frink v. Board of Transportation,* 27 N.C. App. 207, 218 S.E. 2d 713 (1975). An injury which has an adequate remedy at law is not irreparable and therefore equitable relief pending outcome of litigation between the parties is not required. *Gause v. Perkins,* 56 N.C. 177 (1857); *Light and Water Comrs. v. Sanitary District,* 49 N.C. App. 421, 271 S.E. 2d 402 (1980), *disc. rev. denied,* 301 N.C. 721 (1981). In the present case plaintiff has not shown that any injury it might suffer by virtue of defendant's activities cannot be compensated by an award of money damages. In fact, the record fails to disclose evidence of any actual damage to plaintiff. Mere contact of A.E.P.'s customers and solicitation of orders from them by defendant does not show that plaintiff has suffered or will suffer an injury that is not compensable in money damages. No injury is shown, much less irreparable injury, until plaintiff demonstrates that defendant's contact and solicitation in fact diverted orders for polyethylene products away from A.E.P. This has not been established in the record before us.

Further, there has been no credible demonstration that defendant exploited confidential information of plaintiff in contacting various customers of plaintiff. Several of defendant's affiants, sales employees of these customers, stated that product specifications were readily available to anyone in the industry requesting them and that lists of potential polyethylene customers were published periodically. Further, defendant had worked as a salesman of polyethylene products in the Southeast for eleven years before becoming employed by plaintiff, and he stated that before he joined A.E.P. he was aware of the identity of the great majority of the industrial users of polyethylene upon whom he has called since leaving Design Poly-Bag. Finally, there is no evidence that defendant's contacts with A.E.P. customers has damaged A.E.P. because such customers "no doubt consider [defendant] to represent the plaintiff." On the contrary, defendant's affiants stated that when he contacted them, defendant had clearly stated to each that he was no longer working for A.E.P. and that he was in business for himself.

The majority states:

> We hold that where the primary ultimate remedy sought is an injunction; where the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff; where no "legal" (as opposed to equitable) remedy will suffice; and where the decision to grant or deny a preliminary injunction in effect results in a determination on the merits, plaintiff has made a showing that the issuance of a preliminary injunction is necessary for the protection of its rights during the course of litigation.

The statement is without citation of authority, and well it should be, as there is no legal basis for it in the laws of our state. This "holding" removes the requirement of a showing of real and immediate irreparable injury before preliminary injunctive relief can be allowed. It is a well established rule in North Carolina that injunctive relief will be granted only when irreparable injury is both real and immediate. *Telephone Co. v. Plastics, Inc., supra,* 287 N.C. 232, 214 S.E. 2d 49 (1975); *Membership Corp. v. Light Co., supra,* 256 N.C. 56, 122 S.E. 2d 761 (1961) (and cases cited therein). The ultimate decision whether to grant injunctive relief remains within the discretion of the trial judge after a party establishes a prima facie showing to support such relief. *Huskins v. Hospital, supra,* 238 N.C. 357, 78 S.E. 2d 116 (1953). In the absence of a showing of abuse of discretion, such decision is binding upon us. *Harmon v. Harmon,* 245 N.C. 83, 95 S.E. 2d 355 (1956).

The majority's "holding" is an abstract statement not applicable to this case. Here, plaintiff's complaint requests over a million dollars in money damages. Again, where money can compensate for the injury, it is not irreparable. *Gause v. Perkins, supra,* 56 N.C. 177 (1857); *Light and Water Comrs. v. Sanitary District, supra,* 49 N.C. App. 421, 271 S.E. 2d 402 (1980), *disc. rev. denied,* 301 N.C. 721 (1981). Surely, the denial of the preliminary injunction did not serve to effectively deny all relief to plaintiff. The majority itself states that the case is to be remanded for consideration of "plaintiff's other claims for relief including a claim for substantial money damages." Under these facts, how can it be seriously argued that plaintiff does not have an adequate remedy at law?

In addition to determining that plaintiff had not carried its burden of proving reasonable apprehension of irreparable injury, the trial court implicitly held that in its opinion the issuance of a preliminary injunction was not necessary to protect plaintiff's rights during the course of the litigation. When weighing the equities between the parties, the court found:

Since 1965 [defendant] has earned his livelihood and supported himself and his family through employment as a salesman of polyethylene products. He was skilled in the field long before he went to work for the plaintiff. He used in the employment of plaintiff the knowledge he had theretofore acquired and any names and addresses of customers of the plaintiff gained during the performance of his duties for them is not a trade secret, nor is general information concerning the methods of business of the plaintiff. *Kadis v. Britt, supra* [224 N.C. 154, 29 S.E. 2d 543 (1954)].

If the [defendant] is restrained from engaging in this business for a period of eighteen months the injury to him will be real and immediate, and he could not be made whole even though he ultimately prevails upon a determination of the merits.

On the other hand, the plaintiff has failed to establish through its evidence the reasonable likelihood of any substantial monetary damage. If the injunction is granted the plaintiff would in effect have prevailed in the action no matter what the final determination might be.

Therefore in the exercise of the Court's discretion based upon the foregoing analysis, I decline to issue in this case a temporary injunction pending the determination of the matter.

Whereas the majority would rely upon its statement that "the denial of a preliminary injunction would serve effectively to foreclose adequate relief to plaintiff" in determining whether injunctive relief should issue, the trial judge must also consider the opposite side of that coin in exercising his discretion. That is, the trial judge must also consider that the granting of injunctive relief may effectively foreclose defendant's defense to the validity of the contract and in effect decide the case adversely to him

before he has an opportunity to be heard upon the merits. This is one of the reasons that the ultimate decision whether to grant equitable relief is left to the sound discretion of the trial judge. In a case such as this, no matter how the judge rules with respect to the request for injunctive relief, he is effectively deciding the issue with respect to the enforcement of the covenant not to compete. This is as it should be; the trial judge is in the best position to exercise this discretion. He hears the evidence, observes the witnesses, considers the arguments of counsel, and weighs and balances the equities. After so doing, his determination should not be disturbed in the absence of abuse of discretion.

Plaintiff has failed to show that the court abused its discretion in denying the motion for a preliminary injunction. *Huskins v. Hospital, supra,* 238 N.C. 357, 78 S.E. 2d 116 (1953).

If the appeal is not dismissed, the decision of the Court of Appeals should be affirmed.

Justices COPELAND and EXUM join in this dissenting opinion.